**JACOBS, DEBRAUWERE & DEHN LLP**
Attorneys for Defendants Jungle Interactive Media, Inc.
and Jon Housman
445 Park Avenue, 17th Floor
New York, New York  10022
(212) 207-8787

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUSSELL WILD, | : | |
| | : | |
| Plaintiff, | : | Civ. A. No. 02-CV-5123-WY |
| | : | |
| - against - | : | |
| | : | |
| JUNGLE MEDIA GROUP and JON J. HOUSMAN, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS JUNGLE INTERACTIVE MEDIA, INC. AND JON HOUSMAN TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) OR, IF THE COMPLAINT IS NOT DISMISSED, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a)

## **TABLE OF CONTENTS**

TABLE OF CASES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 3

   I.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM: DEFENDANTS CANNOT BE LIABLE FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS BECAUSE, ON THE FACE OF THE COMPLAINT ITSELF, DEFENDANTS WERE MOTIVATED BY ECONOMIC INTEREST AND EMPLOYED NO WRONGFUL MEANS. ................... 3

      A.  On the Face of the Complaint, Defendants Were Motivated By Jungle Interactive Media's Own Economic Self-Interest, Which Was Based on a Reasonable and Nonfrivolous View of Jungle Interactive Media's Rights Under Its Agreements With Plaintiff. ....................... 4

      B.  On the Face of the Complaint, Defendants Did Not Employ "Wrongful Means" in Their Communications with McGraw-Hill. ............................................................................... 13

      C.  Plaintiff's Claim Against Defendant Housman Must, In Any Event, Be Dismissed Because, On the Face of the Complaint, He Was Not Solely Motivated By Malice Toward Plaintiff. ................................................................................................................. 16

   II.  IF THIS ACTION IS NOT DISMISSED, BECAUSE PLAINTIFF EXPRESSLY AGREED IN A FORUM SELECTION CLAUSE THAT ANY SUCH ACTION MUST EXCLUSIVELY BE BROUGHT IN NEW YORK COURTS, THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §1404(a). ................... 17

CONCLUSION ............................................................................................................ 24

## TABLE OF CASES

*Alexander v. Pennsylvania Dep't of Banking*, No. Civ. A. 93-5510 (WY), 1994 WL 144305 (E.D. Pa. Apr. 21, 1994) ................................................................................................17

*Avins v. Moll*, 610 F. Supp. 308 (E.D. Pa. 1984), *aff'd*, 774 F.2d 1150 (3d Cir. 1985) ..............17

*Barbuto v. Medicine Shoppe Intern., Inc.*, 166 F.Supp.2d 341 (W.D. Pa. 2001) ............18, 22, 23

*Burger King Corp. v. Stroehmann Bakeries, Inc.*, 929 F. Supp. 892 (E.D. Pa. 1996) ................23

*Cardinal Business Media, Inc. v. Rockpress Pub. Co.*, No. Civ. A. 96-3872, 1996 WL 729943 (E.D. Pa. Dec. 11, 1996) ..........................................................................................23

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190 (3d Cir.), *cert. denied*, 464 U.S. 938 (1983)................................................................................................20

*Corestates Bank, N.A. v. Signet Bank*, No. Civ. A. 96-3199 (WY), 1996 WL 482909 (E.D. Pa. Aug. 26, 1996) ...................................................................................................3, 21

*Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943 (3d Cir. 1988) ........................20

*Foster v. Chesapeake Insurance Company, Ltd.,* 933 F.2d 1207 (3d Cir.1991) ..................22, 23

*Giordano v. Witzer*, 558 F. Supp. 1261 (E.D.Pa. 1983) ........................................................21

*Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105 (2d Cir. 1997)..................................................4

*Idasetima v. Wabash Metal Products, Inc.,* No. Civ. A. 01-197 (WY), 2001 WL 1526270 (E.D. Pa. Nov. 29, 2001) ................................................................................................18

*In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d Cir. 1992)................................................................3

*Jordan v. SEI Corp*, No. Civ. A. 96-1616 (WY), 1996 WL 296540 (E.D. Pa. Jun. 4, 1996) .5, 22

*Jumara v. State Farm Ins. Co*., 55 F.3d 873 (3d Cir. 1995) ..................................................18, 22

*M. F. Restoration Co. v. Elliott, Bray & Riley*, 1994 WL 719731 (E.D. Pa. Dec. 22, 1994).......3

*Missigman v. USI Northeast, Inc.*, 131 F.Supp.2d 495 (S.D.N.Y. 2001) ..............................4, 15

*Mobile Data Shred, Inc. v. United Bank of Switzerland*, No. 99 Civ. 10315 (SAS), 2000 WL 351516 n.10 (S.D.N.Y. Apr. 5, 2000)................................................................................17

*Multivideo Labs, Inc. v. Intel Corp*., No. 99 Civ 3908 (DLC), 2000 WL 12122  (S.D.N.Y. Jan. 7, 2000) ......................................................................................................................4, 12

*Murray v. Sysco Corp*., 273 A.D.2d 760, 710 N.Y.S.2d 179 (3d Dep't 2000)....................14, 15

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 664 N.E.2d 492, 641 N.Y.S.2d 581 (1996).......................................................................................................3

*Nemo Associates, Inc. v. Homeowners Marketing Services Intern., Inc.*, 942 F. Supp. 1025 (E.D. Pa. 1996) ........................................................................................19, 22, 23

*Pagliaccio v. Holborn Corp.,* 289 A.D.2d 85, 734 N.Y.S.2d 148 (1st Dep't 2001) ....................14

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192 (3d Cir.1993), *cert. denied,* 510 U.S. 1042 (1994) ................................................................................5

*Protic v. Dengler*, 46 F.Supp.2d 277 (S.D.N.Y.), *aff'd*, 205 F.3d 1324 (2d Cir. 1999) ..............4

*Roeder v. Rogers*, 206 F.Supp.2d 406 (W.D.N.Y. 2002) ........................................................14

*Rototherm Corp. v. Penn Linen & Uniform Serv., Inc.*, No. Civ. A. 96-6544, 1997 WL 419627 (E.D. Pa. Jul. 3, 1997).....................................................................................17

*Satcom Int'l Group PLC v. Orbcomm Int'l Partners L.P.*, No. 98 Civ. 9095 (DLC), 2000 WL 729110 (S.D.N.Y. Jun. 6, 2000) ..................................................................................4

*Scanlan v. Devon Systems, Inc.*, No. 89 Civ. 1634 (LMM), 2000 WL 218389 (S.D.N.Y. Feb. 24, 2000) ................................................................................................................17

*Stone Street Services, inc. v. Breaux*, No. Civ. A. 00-1904, 2000 WL 876886 (E.D. Pa. Jun. 19, 2000) ...................................................................................................................23, 24

*Sumitomo Bank of New York Trust Co. v. DiBenedetto*, 256 A.D.2d 89, 681 N.Y.S.2d 248 (1st Dep't 1998) .................................................................................................................15

*Swanston v. Pataki*, No. 97 Civ. (MJLKTD), 1999 WL 504905 (S.D.N.Y. Jul. 15, 1999), *aff'd.*, 25 Fed. Appx. 98, 2001 WL 1586695 (2d Cir. 2001) ..........................................5, 12

*VERSAR, Inc. v. Ball*, No. Civ. A. 01-1302, 2001 WL 818354 (E.D. Pa. July 12, 2001) .....20, 21

*W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 566 N.E.2d 639, 565 N.Y.S.2d 440 (1990) ........................................................................................................................10

*Wayland Inv. Fund, LLC. v. Millenium Seacarriers, Inc.*, 111 F.Supp.2d 450 (S.D.N.Y. 2000) 10

*Weiskopf v. American Kennel Club, Inc.*, No. 00-CV-471 (NG), 2002 WL 1303022 (E.D.N.Y. Jun. 11, 2002) ..............................................................................................................5

*World Wide Communications,Inc. v. Rozar*, No. 96 Civ. 1056 (MBM)(NRB), 1997 WL 795750 (S.D.N.Y.  Dec. 30, 1997) ..................................................................................13

## PRELIMINARY STATEMENT

This action arises from contracts executed by the plaintiff in this action, freelance author Russell Wild, and defendant Jungle Interactive Media, Inc., the publisher of the magazine *MBA Jungle*, pursuant to which plaintiff wrote articles for the "What B-School Didn't Teach Me" feature in *MBA Jungle*. Under Paragraph 5.1 of plaintiff's contracts, following an "Exclusivity Period" (during which plaintiff is completely barred from republishing his articles), plaintiff has the right to authorize reuse of his articles only with "the prior written permission" of *MBA Jungle*. By comparison, under Paragraph 4.1(c), (d) and (e) of those contracts, Jungle Interactive Media has the right to itself republish or to authorize others to republish the articles, without plaintiff's permission but subject to various contractual formulae for further compensation to plaintiff.

Notwithstanding the restrictions on his republication rights in Paragraph 5.1 of his contracts, plaintiff -- without obtaining *MBA Jungle*'s permission or even informing *MBA Jungle* -- engaged in negotiations with McGraw-Hill to publish a book, tentatively titled *"The Instant MBA,"* approximately one-third of which was to consist of articles written by plaintiff for *MBA Jungle*'s "What B-School Didn't Teach Me" feature pursuant to those contracts. When it learned about these negotiations from a McGraw Hill press release, Jungle Interactive Media reminded plaintiff and his attorneys of those restrictions -- to no avail. Jungle Interactive Media's attorneys thereupon gave McGraw-Hill notice of its contractual right to control republication of the articles written by plaintiff for *MBA Jungle*, made clear that it had not granted plaintiff the required "prior written permission," further pointed out that, under those same agreements with plaintiff, Jungle Interactive Media had the right to republish those materials itself, and advised McGraw-Hill of the possibility of legal claims against McGraw-Hill if it proceeded to publish plaintiff's articles without Jungle Interactive

Media's prior written permission after having received such notice of plaintiff's contractual restrictions.

Unable to negotiate a book contract with McGraw-Hill under these circumstances, plaintiff filed this action in the Court of Common Pleas for Lehigh County on June 24, 2002, against Jungle Interactive Media and its Co-Founder Jon Housman, claiming tortious interference with prospective contractual relations.   On July 22, 2002, defendants removed this action to the United States District Court for the Eastern District of Pennsylvania.

From the face of the Complaint and the documents plaintiff has attached to it and incorporated therein, defendants were motivated by Jungle Interactive Media's own economic self-interest, which was based on a manifestly reasonable and nonfrivolous view of Jungle Interactive Media's rights under its agreements with plaintiff, and they employed no "wrongful means" in giving notice of its rights and potential claims to McGraw-Hill.   Accordingly, the elements of tortious interference with prospective contractual relations are lacking as a matter of law, and the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

However, in the event that this Court does not dismiss this action, because the contracts between plaintiff and Jungle Interactive Media contain a forum selection clause that expressly provides for exclusive jurisdiction in New York courts of all disagreements or disputes arising under those agreements, this Court should transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## <u>ARGUMENT</u>

I. **THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM: DEFENDANTS CANNOT BE LIABLE FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS BECAUSE, ON THE FACE OF THE COMPLAINT ITSELF, DEFENDANTS WERE MOTIVATED BY ECONOMIC INTEREST AND EMPLOYED NO WRONGFUL MEANS.**

Under New York law,[1] the elements of a claim of tortious interference with prospective contractual (or "business" or "economic") relations[2] are as follows:  "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship,

---

[1]    New York law applies to plaintiff's claims, not only because, as the Complaint itself makes clear, plaintiff's claims manifestly arise from and implicate the terms of Mr. Wild's agreements with Jungle Interactive Media, and not only because of the predominant New York interest in this litigation, insofar as the claims involve communications between Jungle Interactive Media and McGraw-Hill, both New York corporations.  New York law applies, above all, because Mr. Wild and Jungle Interactive Media expressly stipulated in Paragraph 7.4 of their agreements that their agreements "shall be governed by and construed under the laws of New York…."  Complaint, Exhibit A.  A copy of the Complaint is attached as Exhibit 1 to this Motion.  As this Court explained with respect to the same language at issue in *Corestates Bank, N.A. v. Signet Bank*, No. Civ. A. 96-3199 (WY), 1996 WL 482909 (E.D. Pa. Aug. 26, 1996), "The word 'and' is the pivotal term because it indicates that the words 'governed by' envision claims other than those sounding in contract law, which are adequately covered by the language 'construed in accordance with.'"  *Corestates Bank, N.A. v. Signet Bank*, 1996 WL 482909, *5 n.3.  *See also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 178 (3d Cir. 1992); *M. F. Restoration Co. v. Elliott, Bray & Riley*, 1994 WL 719731, *2 & n.3 (E.D. Pa. Dec. 22, 1994).

[2]    Count I in the Complaint, against defendant Jungle Interactive Media, is entitled "Tortious Interference with Prospective Contractual Relations."  Count II in the Complaint, against defendant Jon Housman, is entitled "Tortious Interference with Contractual Relations."  At no point in the Complaint does it allege that plaintiff entered into a contract with McGraw-Hill concerning his articles for *MBA Jungle*.  Indeed, the allegations in Count II itself continue to refer to defendants' alleged "wrongful interference" with plaintiff's "prospective contractual relationship with McGraw-Hill," "conduct intended to induce McGraw-Hill to forego [sic] a contractual relationship with Plaintiff," a "scheme to terminate the contractual negotiations between Plaintiff and McGraw-Hill," and "efforts to terminate Plaintiff's prospective contractual relationship with McGraw-Hill."  Complaint, ¶¶ 55, 57, 62, 64.  Notwithstanding the difference between the two titles of Count I and Count II, both should be understood as claims of "tortious interference with prospective contractual relations."  On the difference between the elements of "tortious interference with contractual relations" and the elements of "tortious interference with prospective contractual relations," for which "plaintiff must show more culpable conduct on the part of the defendant," *see NBT Bancorp*

intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108-109 (2d Cir. 1997). *See also Missigman v. USI Northeast, Inc.*, 131 F.Supp.2d 495, 514 (S.D.N.Y. 2001); *Satcom Int'l Group PLC v. Orbcomm Int'l Partners L.P.*, No. 98 Civ. 9095 (DLC), 2000 WL 729110, *21 (S.D.N.Y. Jun. 6, 2000).

A.    **On the Face of the Complaint, Defendants Were Motivated By Jungle Interactive Media's Own Economic Self-Interest, Which Was Based on a Reasonable and Nonfrivolous View of Jungle Interactive Media's Rights Under Its Agreements With Plaintiff.**

For purposes of the third element of tortious interference with prospective contractual relations, malice toward the plaintiff must be the defendant's **sole** motive.  "An intent to promote one's own competing economic interests is considered a legitimate motive under New York's tortious interference law." *Multivideo Labs, Inc. v. Intel Corp.*, No. 99 Civ. 3908 (DLC), 2000 WL 12122, *18  (S.D.N.Y. Jan. 7, 2000). *See also Missigman v. USI Northeast, Inc.*, 131 F.Supp.2d at 515. "The presence of a legitimate motive, even coupled with an intent to harm, defeats a tortious interference claim." *Multivideo Labs, Inc. v. Intel Corp.*, 2000 WL 12122, *18. *See also Missigman v. USI Northeast, Inc.*, 131 F.Supp.2d at 515; *Protic v. Dengler,* 46 F.Supp.2d 277, 279 (S.D.N.Y.), *aff'd*, 205 F.3d 1324 (2d Cir. 1999) (dismissing tortious interference claim for failure to state a claim upon which relief may be granted because the allegation that defendant's statements were made "with the purpose of harming plaintiff … falls short of asserting that [such] statements were made with the **sole** purpose of harming plaintiff") (emphasis in original); *Swanston v. Pataki*, No. 97 Civ. (MJLKTD), 1999 WL 504905, *8 (S.D.N.Y. Jul. 15, 1999), *aff'd.*, 25 Fed. Appx. 98, 2001 WL

*Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 621, 664 N.E.2d 492, 496, 641 N.Y.S.2d 581,

1586695 (2d Cir. 2001) (granting motion to dismiss because plaintiff "cannot demonstrate exclusive malicious intent, since one can clearly infer from the Complaint and the [referenced] letter that [defendants] acted at least partly out of self-interest"); *Weiskopf v. American Kennel Club, Inc.*, No. 00-CV-471 (NG), 2002 WL 1303022, *13 (E.D.N.Y. Jun. 11, 2002) (no tortious interference claim where defendant "was motivated, in part, by its competing interests").

On the face of the Complaint and the documents attached to it and incorporated therein, it is patently clear that defendants were motivated by Jungle Interactive Media's own economic self-interest, and, indeed, that their understanding of that economic interest and their communications to McGraw-Hill were based on a reasonable and nonfrivolous view of Jungle Interactive Media's rights under the agreements with Mr. Wild pertaining to the articles he wrote for *MBA Jungle*.[3]

Paragraph 5.1 of each of the pertinent agreements between Mr. Wild and Jungle Interactive Media contains "Restrictions" on Mr. Wild's rights in the article in addition to those set forth in

---

585 (1996).

[3]    Although the Complaint itself refers to a single agreement between Mr. Wild and Jungle Interactive Media, attached to the Complaint is a letter from plaintiff's attorney, Allen I. Tullar, to Vince Bielski, the Editor in Chief of *MBA Jungle*, in which Mr. Tullar refers to eight other agreements, *i.e.*, "Russ Wild Freelance Agreements of 6/12/00, 7/14/00, 9/1/00, 10/6/00, 11/29/00. 12/29/00, 1/29/01, 6/1/01." Complaint, Exhibit B. There were, in fact, ten agreements executed by Mr. Wild and Jungle Interactive Media pertaining to the "What B-School Didn't Teach Me" articles that Mr. Wild wrote for *MBA Jungle*. Housman Declaration ¶ 2. The ten agreements are attached as Exhibit 2 to this Motion. These agreements all contain language regarding the terms that are at issue in this motion, *i.e.*, the "Grant of Rights" in Paragraph 4.1, the "Restrictions" in Paragraph 5.1, and the "Governing Law" and forum selection clause in Paragraph 7.4, that is essentially identical to the terms in the corresponding paragraphs in the agreement attached as Exhibit A to the Complaint. For ease of reference and discussion, reference in this memorandum shall ordinarily be to the agreement dated January 29, 2001 attached as Exhibit A to the Complaint. With respect to the copies of the agreements attached to the Housman Declaration, on a motion to dismiss, a district court may, without having to convert the motion to one for summary judgment, consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* 510 U.S. 1042 (1994). *See Jordan v. SEI Corp*, No. Civ. A. 96-1616 (WY), 1996 WL 296540, *1 (E.D. Pa. Jun. 4, 1996).

Paragraph 4 ("Grant of Rights"), and provides as follows: "In addition to restrictions during the Exclusivity Period, Writer shall not authorize the use of the Article, at any time, in any publication, web site or other means of distribution by any business-oriented web site or print publication, without the prior written permission of the Editor in Chief." Complaint, Exhibit A.

Paragraph 4.1(a) of each of the agreements grants Jungle Interactive Media the exclusive right to first publish the article during the "Exclusivity Period," which is defined as the period from the date of the agreement until 90 days beyond the first publication of the article. Paragraph 4.1(a) further provides that "Writer will not allow anyone else to publish or use the Article or any portions thereof or in any medium until after the expiration of the Exclusivity Period." Complaint, Exhibit A.

Paragraph 4.1(c), (d) and (e) grant to Jungle Interactive Media the right to itself republish or to authorize others to republish the article, without requiring Mr. Wild's permission, in publications, collections, compendia or compilations, subject to various contractual formula for further compensation to Mr. Wild. Complaint, Exhibit A.

The overall outline of the parties' respective republication rights is therefore patently clear. By virtue of Paragraph 4.1(a), within the Exclusivity Period, Mr. Wild has no right to authorize anyone else to use his articles. By virtue of Paragraph 5.1, following the Exclusivity Period, Mr. Wild has the right to authorize reuse of his articles only with "the prior written permission of the Editor in Chief [of *MBA Jungle*]." By virtue of Paragraph 4.1(c), (d) and (e), both during and after the Exclusivity Period, Jungle Interactive Media has the right to itself republish or to authorize others to republish the articles, without Mr. Wild's permission but subject to various contractual formula for further compensation to Mr. Wild.

That the "restriction" set forth in Paragraph 5.1 is fully applicable to the book Mr. Wild was negotiating with McGraw-Hill is obvious. According to the Complaint, approximately one-third of

the proposed book, "tentatively titled *The Instant MBA*," was to consist of articles Mr. Wild wrote for the "What B-School Didn't Teach Me" feature in *MBA Jungle*. Complaint, ¶ 12. The straightforward meaning of Paragraph 5.1 is that "prior written permission" from *MBA Jungle* is required before Mr. Wild can reuse his articles "in any" (1) "publication"; (2) "website"; or (3) "other means of distribution by any business-oriented web site or print publication." There is no question that *The Instant MBA* fits the description "any publication" and that *MBA Jungle*'s prior written permission was therefore required.

In his attempt to escape from Jungle Interactive Media's rights in these articles, plaintiff puts forward three tortuous (and mutually incompatible) alternate versions of the meaning of this provision. First, plaintiff maintains that Paragraph 5.1 should be construed to require "prior written permission" only for reuse "in any publication … by any business-oriented web site or print publication." Complaint, ¶ 42. Plaintiff thus would require that the sentence contain the obtuse construction "in any publication … by any … publication." This rendering of the sentence into gibberish becomes possible only by conveniently omitting from the sentence its phrase "or other means of distribution," to which the phrase that immediately follows, "by any business-oriented web site or print publication," obviously pertains.

But even with plaintiff's obtuse construction, the sentence still would require *MBA Jungle*'s "prior written permission" for Mr. Wild's contemplated publication since it is obvious that a book titled *The Instant MBA* comprised of articles that appeared in a feature entitled "What B-School Didn't Teach Me" would be a "business-oriented print publication."

Plaintiff is not finished rewriting the sentence, however. Apparently insisting that the phrase "business-oriented print **publication**" be read as "business-oriented print **publisher**," plaintiff contends that "the agreement cannot be construed to prohibit republication of Plaintiff's previously

7

published MBA Jungle content in a book by a non-business oriented website or print publication general publisher like McGraw-Hill." Complaint, ¶ 42; *see also id.* ¶ 19, Exhibit D. But even if we were to accept plaintiff's complete rewriting of the provision *arguendo*, *MBA Jungle*'s prior written permission would still be required because McGraw-Hill is obviously a business-oriented publisher. At the risk of belaboring the obvious, McGraw-Hill is probably the world's largest publisher of business-related texts, and it has in print hundreds upon hundreds of books in such fields as Business Communications, Business Law, Business and Society, Business Ethics, Business Policy and Strategic Management, Compensation, E-Business, Employee Benefits, Enterpreneurship, Human Resource Management/Personnel, Industrial Psychology, International Business, International Human Resource Management, International Management, Introduction to Business, Labor Relations and Collective Bargaining, Leadership, Management Skills, Negotiation, Organizational Behavior, Development and Theory, Principles of Management, Staffing, Total Quality Management and Training and Development. *See* Exhibit 3 to the Motion (containing a sampling of pages from McGraw-Hill's website listing some of McGraw-Hill's current publications under these and other business-related categories).

Plaintiff's second argument for escaping from the restrictions in Paragraph 5.1 is the contention of his attorney in correspondence with *MBA Jungle* that Paragraphs 4.1 and 5.1 are "inconsistent." Complaint, Exhibit B. However, as the foregoing discussion makes clear, there is no such inconsistency. Under Paragraph 4.1(a), within the Exclusivity Period, Mr. Wild has no right to authorize anyone else to use his articles. Under Paragraph 5.1, following the Exclusivity Period, Mr. Wild has the right to authorize reuse of his articles only with "the prior written permission of the Editor in Chief." Under Paragraph 4.1(c), (d) and (e), both during and after the Exclusivity Period, Jungle Interactive Media has the right to itself republish or to authorize others to republish the

8

articles, without Mr. Wild's permission but subject to various contractual formula for further compensation to Mr. Wild.  That Jungle Interactive Media is afforded the right under Paragraph 4.1(c), (d) and (e) to itself republish the articles **without Mr. Wild's consent** after the Exclusivity Period in publications, collections, compendia or compilations (*i.e.*, a publication such as that Mr. Wild attempted to negotiate with McGraw-Hill) and that such provisions provide for Mr. Wild's further compensation in the event of such republication simply underscore the corollary restriction on Mr. Wild's republishing the articles without Jungle Interactive Media's written consent.

There is therefore no ambiguity as to the meaning of Paragraph 5.1 insofar as the application of its requirement of *MBA Jungle*'s prior written permission to Mr. Wild's contemplated reuse of the articles in the book to be published by McGraw-Hill is concerned.  The positions taken by defendants in their dealings with both Mr. Wild and McGraw-Hill as to Jungle Interactive Media's right to restrict reuse of the articles by Mr. Wild and as to Jungle Interactive Media's own rights and economic interests in such materials under its agreements with Mr. Wild were not only reasonable and nonfrivolous but manifestly justified.[4]

Plaintiff's third argument for escaping from the restrictions in Paragraph 5.1 is his contention, which flies in the face of the language of the agreements (as well as even his own construction of Paragraph 5.1), that "the intent of the parties to said contract was that Plaintiff could republish content authored by him and published in MBA Jungle in a book of his own and that Plaintiff was only restricted from republishing said content to a competitive business magazine or

---

[4]    Plaintiff alleges in the Complaint that the "specific wording" of Paragraph 5.1 "was negotiated by the parties…."  Complaint, ¶ 10, *see also id.* ¶¶ 11, 16.  Accordingly, based on the Complaint itself, the agreement should be viewed as the product of an arm's-length negotiation between the parties and should not "be construed against Defendant Jungle Interactive Media" (as the Complaint argues in ¶ 41).  Indeed, on at least ten separate occasions, Mr. Wild agreed to such provisions, as well as to the forum selection clause in Paragraph 7.4.  Housman Decl. ¶ 2, Exhibit 2.

website." Complaint, ¶ 44; *see also id*. ¶¶ 10, 16. Plaintiff's current account of the supposed intent of the parties flatly contradicts the expressed terms of the agreements concerning restrictions on Mr. Wild's right to reuse such articles without Jungle Interactive Media's prior written permission. Each of the agreements between Mr. Wild and Jungle Interactive Media contains an explicit and unqualified "Entire Agreement" clause that provides as follows:

> **7.5.    Entire Agreement**. **This Agreement constitutes the entire agreement between the parties relating to the subject matter of this Agreement and supersedes all proposals, negotiations, conversations, understandings, or discussions, whether written or oral, between parties relating to the subject matter of this Agreement and all past dealing or industry custom, except for written agreement signed by the Editor in Chief or an executive officer of Jungle making reference to this Agreement and the clause to be changed.

Complaint, Exhibit A. Plaintiff's appeal to a supposed intent that alters the written terms of an expressly integrated agreement is patently untenable as a matter of law. *W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 162-63, 566 N.E.2d 639, 642, 565 N.Y.S.2d 440, 443 (1990); *Wayland Inv. Fund, LLC. v. Millenium Seacarriers, Inc.*, 111 F.Supp.2d 450, 453-54 (S.D.N.Y. 2000).

Thus, on the basis of the Complaint and the documents attached thereto and incorporated therein, it is clear that the positions taken by defendants in their communications with both Mr. Wild and McGraw-Hill were based on a reasonable, nonfrivolous and, indeed, straightforward understanding of the contractual provisions that concern Jungle Interactive Media's republication rights under its agreements with Mr. Wild and on the company's economic interest in controlling such republication and in proceeds from such republication pursuant to those provisions. Plaintiff has not pleaded, nor could he possibly maintain were he allowed to replead, that defendants' expressed contractual positions and their economic interest based thereon had nothing to do with

their communications with McGraw-Hill and that such communications were instead "solely" motivated by malice toward Mr. Wild.

Although defendant Housman disputes plaintiff's account of his communications with McGraw-Hill's editor, *see* Complaint, Exhibit G, even if plaintiff's description of those communications is accepted for purposes of this motion, it remains obvious that defendants were motivated by the foregoing view of Jungle Interactive Media's republication rights under its agreements and by the company's consequent economic interest in any such republication of *MBA Jungle* articles.   Indeed, plaintiff in his Complaint and in the documents incorporated in the Complaint repeatedly admits that defendants were motivated by such economic interests:

- At ¶ 21, the Complaint alleges that, on March 19, 2002, Mr. Housman telephoned McGraw-Hill editor Danielle Egan-Miller "**to propose a business relationship between McGraw-Hill and Jungle Interactive Media** whereby Jungle Interactive Media would author a book on business tips substantially similar to the one which was already the subject of contract negotiations between Plaintiff and McGraw-Hill." (emphasis added).

- At ¶ 25, the Complaint alleges that "[b]y March 25, 2002, McGraw-Hill expressed concern to Plaintiff that MBA Jungle **was claiming proprietary rights in Plaintiff's business school column concept**…."  (emphasis added); *see also id*. ¶ 59.

- Also at ¶ 25, the Complaint then refers to an e-mail dated March 25, 2002 from Ms. Egan-Miller to Mr. Wild in which she states that she told "MGH legal counsel … about how Jon Housman called me **and pitched me a book publishing relationship – I shared that I suspect Jungle's motivations are financial ones."**  Complaint, Exhibit H (emphasis added).

- At ¶ 28, the Complaint further alleges that Mr. Housman, "**acting on behalf of and in his capacity as Co-Founder of Defendant, Jungle Interactive Media**. advised Plaintiff that **he wanted Jungle Interactive Media to publish Plaintiff's book** and that Plaintiff should sever his relationship with McGraw-Hill."  (emphasis added).

- Also at ¶ 28, the Complaint then refers to an e-mail on May 6, 2002 from Mr. Housman to Mr. Wild in which he states "it may be a much better option to go elsewhere.  **The money we are talking about here is very low.  I think it best to**

11

**sit down with a new publisher, and get this book done at a higher price, which I am confident we can do.**" Complaint, Exhibit I (emphasis added).

Except for the conclusory allegation in the Complaint that defendants acted "maliciously," there are no allegations set forth in the Complaint that at all reflect any personal ill will by defendants to Mr. Wild. In any event, there is no allegation that defendants' **sole** motive was malice toward Mr. Wild, and even if there had there been any such allegation, it would contradict plaintiff's other allegations admitting defendants' economic interest. Thus, in *Multivideo Labs, Inc. v. Intel Corp.*, the court dismissed plaintiff's tortious interference claim because, "[a]lthough MVL argues that one of Intel's motives in sending the Whalley letter was to disrupt MVL's business relations, MVL admits that Intel also sent the letter 'to encourage the purchase of USB compliant products over the AEC.'" *Id.*, 2000 WL 12122, *18. *See also Swanston v. Pataki*, 1999 WL 504905, *8 (granting motion to dismiss because plaintiff "cannot demonstrate exclusive malicious intent, since one can clearly infer from the Complaint and the [referenced] letter that [defendants] acted at least partly out of self-interest"). Accordingly, even if plaintiff's conclusory use of the word "maliciously" is taken to mean that defendant acted out of ill will toward plaintiff, plaintiff's numerous admissions in his Complaint that defendants were motivated by competing economic interests are similarly fatal to his tortious interference claims.

There can be no dispute for purposes of this motion that, based on the foregoing understanding of Jungle Interactive Media's republication rights, defendants were motivated by Jungle Interactive Media's economic interest. Plaintiff's allegations themselves demonstrate that the defendants were not motivated **solely** by ill will toward Mr. Wild and, accordingly, that the requisite elements of tortious interference with contractual relations are neither pled nor otherwise presented by the Complaint.

12

**B.    On the Face of the Complaint, Defendants Did Not Employ "Wrongful Means" in Their Communications with McGraw-Hill.**

Just as he does not plead that defendants were motivated **solely** by malice, plaintiff does not plead that defendants employed "wrongful" or "improper" means in their communications with McGraw-Hill.[5]  In any event, no such pleading would be consistent with plaintiff's allegations.  As set forth in the Complaint and in the documents attached to and incorporated therein, it is clear that defendants' communications with McGraw-Hill were entirely proper.  In his March 15, 2002 letter to McGraw-Hill Editor Danielle Egan-Miller, Jungle Interactive Media's attorney Robert J. deBrauwere notified McGraw-Hill of Jungle Interactive Media's right under its agreements with Mr. Wild to control republication of the articles written by Mr. Wild for *MBA Jungle*, made clear that Jungle Interactive Media had not granted Mr. Wild the required "prior written permission" to reuse his articles in McGraw-Hill's contemplated publication, and further pointed our that, under those same agreements, Jungle Interactive Media may publish those materials itself, subject to its obligation to pay Mr. Wild the contractually-prescribed additional fee.  Complaint, Exhibit C.  Mr. deBrauwere further properly advised McGraw-Hill of adverse legal consequences if, following such notice of the agreements between Mr. Wild and Jungle Interactive, it persisted in plans to publish the *MBA Jungle* articles:

> We appreciate that McGraw-Hill may have undertaken these publication plans without full knowledge of Mr. Wild's contractual obligations to Jungle Interactive.  Now that we have apprised McGraw-Hill of those obligations, however, under these circumstances, any publication by McGraw-Hill of these *MBA Jungle* materials in "THE INSTANT MBA" will constitute tortious interference with the

---

[5]    These failures, in themselves, require dismissal of plaintiff's claims.  *World Wide Communications, Inc. v. Rozar*, No. 96 Civ. 1056 (MBM)(NRB), 1997 WL 795750, *7 (S.D.N.Y. Dec. 30, 1997) (claimants "must plead more than merely conclusory language; the law requires some factual specificity in pleading tortious interference").  However, the problem with plaintiff's pleading is not merely that it does not recite the requisite elements of tortious interference but that his factual allegations fatally contradict such elements.

Freelance Agreements between Mr. Wild and Jungle Interactive.  We therefore demand that McGraw-Hill cease its plans to publish these materials as well as its press releases concerning these materials immediately.

Complaint, Exhibit C.

Under New York case law, Jungle Interactive Media's communications with McGraw-Hill, including its notice of the possibility of claims against McGraw-Hill if it proceeded to publish Mr. Wild's articles without Jungle Interactive Media's consent following such notice, cannot constitute tortious interference with prospective contractual relations since they were clearly designed to protect Jungle Interactive Media's economic interest and evinced no "wrongful means."

For purposes of tortious interference claims, "civil suits and threats thereof constitute 'improper means' only if such tactics are frivolous." *Pagliaccio v. Holborn Corp.,* 289 A.D.2d 85, 734 N.Y.S.2d 148, 149 (1st Dep't 2001) (citing Restatement [Second] of Torts § 767).  *See Roeder v. Rogers*, 206 F.Supp.2d 406, 412 (W.D.N.Y. 2002).  For example, in *Murray v. Sysco Corp.*, 273 A.D.2d 760, 710 N.Y.S.2d 179 (3d Dep't 2000), the defendant, which had formerly employed plaintiff as its sales manager, wrote plaintiff's new at-will employer to inform it of the nonsolicitation and confidentiality provisions in the agreement plaintiff had signed while employed by defendant.  Referring to the prohibited activities, defendant's letter further stated  that "such activities reflect badly on [the new employer] and subject it to the risk of incurring substantial legal liability." *Id.*, 273 A.D.2d at 762, 710 N.Y.S.2d 181.  The court held that this letter evinced neither malice nor wrongful means.  Similarly, in *Missigman v. USI Northeast, Inc.*, where the defendant insurance company encouraged plaintiff's employer (of which defendant was a shareholder and underwriter) to fire plaintiff and to turn the program on which the plaintiff had been working over to defendant, and threatened litigation against the employer if it sought to protect the program and plaintiff, the court ruled that, insofar as its actions were "fully consistent with a desire for economic

14

gain" and it had not threatened litigation "in bad faith with no belief in its merit," defendant could not be found either to have acted with the sole purpose of harming plaintiff or to have employed "improper means." *Id.*, 131 F.Supp.2d at 515. *See also Sumitomo Bank of New York Trust Co. v. DiBenedetto*, 256 A.D.2d 89, 89, 681 N.Y.S.2d 248, 248 (1st Dep't 1998) ("We agree with the motion court that such threat, which was undisputedly made for a valid economic purpose, neither amounted to improper means, nor was actuated by malice, and is therefore insufficient to sustain the complaint [for tortious interference with precontractual relations]") (citations omitted).

Plaintiff's account in the Complaint of defendant Housman's communication with a McGraw-Hill editor similarly evinces no "wrongful means." Plaintiff contends that Mr. Housman in a telephone conversation with the editor "asserted a purported proprietary interest in the concept behind the book Plaintiff was to author for McGraw-Hill," Complaint ¶¶ 47, 59 and that "[t]he effect of said communication was to place McGraw-Hill on notice that publication by it of any book by Plaintiff consisting of financial advice would result in the filing of a lawsuit by Defendant, Jungle Interactive Media." Complaint ¶¶ 48, 60. The sole basis for plaintiff's allegation concerning Mr. Housman's communication with Ms. Egan-Miller is her own account of her conversation with Mr. Housman in an email dated March 25, 2002 from Ms. Egan-Miller to Mr. Wild, which plaintiff has attached to and incorporated in his Complaint as Exhibit H. In that e-mail, Ms. Egan-Miller's account of her conversation contains nothing whatsoever to suggest that Mr. Housman ever made the absurd claim that Mr. Wild was barred from writing "any book consisting of financial advice." The documents attached to and incorporated in the Complaint make clear that the dispute between the parties is concerned with their respective rights to republish the specific articles that Mr. Wild wrote for the "What B-School Never Taught Me" features in *MBA Jungle*. In any event, Mr. Housman obviously did not employ "wrongful means" in his communications with Ms. Egan-Miller.

15

In sum, on the face of the Complaint and the documents attached to and incorporated in the Complaint, defendants' consistent position that Jungle Interactive Media's written permission was required before Mr. Wild could enter into any agreement with McGraw-Hill concerning republication of the articles written for *MBA Jungle* clearly was not frivolous, and defendants therefore employed no "wrongful means" in their communications with McGraw-Hill.

### C.    Plaintiff's Claim Against Defendant Housman Must, In Any Event, Be Dismissed Because, On the Face of the Complaint, He Was Not Solely Motivated By Malice Toward Plaintiff.

"The overwhelming weight of authority, even in the corporate context, is that a corporate officer, director, trustee or other management level agent is *not* personally liable for inducing breach of contract unless the individual's *sole* motive in causing the corporation to breach a contract is actual malice directed toward the plaintiff, or the individual's conduct is against the interest of the corporation." *Scanlan v. Devon Systems, Inc.*, No. 89 Civ. 1634 (LMM), 2000 WL 218389, *5 (S.D.N.Y. Feb. 24, 2000) (*quoting Avins v. Moll*, 610 F. Supp. 308, 318 (E.D. Pa. 1984) (emphasis in original), *aff'd,* 774 F.2d 1150 (3d Cir. 1985)). *See also Mobile Data Shred, Inc. v. United Bank of Switzerland*, No. 99 Civ. 10315 (SAS), 2000 WL 351516, *7 n.10 (S.D.N.Y. Apr. 5, 2000); *Rototherm Corp. v. Penn Linen & Uniform Serv., Inc.*, No. Civ. A. 96-6544, 1997 WL 419627, *13 n.14 (E.D. Pa. Jul. 3, 1997); *Alexander v. Pennsylvania Dep't of Banking*, No. Civ. A. 93-5510 (WY), 1994 WL 144305, *13 (E.D. Pa. Apr. 21, 1994).

As already shown, on the face of the Complaint itself, there is no allegation and no basis for alleging that Mr. Housman's actions were either **solely** motivated by malice toward Mr. Wild or contrary to the interest of Jungle Interactive Media.  Instead, on the face of the Complaint, Mr. Housman's actions were manifestly undertaken on the basis of his view of the corporation's interest based on the understanding of Jungle's rights under its agreements with Mr. Wild to control

16

republication of the articles written pursuant to those agreements as set forth in the letters of Jungle Interactive Media's attorneys to McGraw-Hill and Mr. Wild's attorneys.   Accordingly, the claim against defendant Housman must, in any event, be dismissed.

II.    **IF THIS ACTION IS NOT DISMISSED, BECAUSE PLAINTIFF EXPRESSLY AGREED IN A FORUM SELECTION CLAUSE THAT ANY SUCH ACTION MUST EXCLUSIVELY BE BROUGHT IN NEW YORK COURTS, THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §1404(a).**

Under 28 U.S.C. §1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Clearly, venue in the Southern District of New York would be proper under 28 U.S.C. §1391(a): all defendants reside in New York and, since this action arises from agreements expressly governed by New York law, involves New York defendants and challenged communications between such New York defendants and McGraw-Hill Companies, Inc., a New York corporation, a substantial part of the events giving rise to plaintiff's claims occurred in New York.

This Court has summarized the Third Circuit's enumeration of factors to consider in determining when to allow transfer of venue pursuant to §1404(a), as follows:

> The Third Circuit has enumerated a host of factors to aid in determining when to allow a transfer of venue. These factors include both private and public interests. *Jumara* [*v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)].   The private interests to be considered include: (1) plaintiff's choice of forum; (2) defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records--similarly limited to the extent that files could not be produced in the alternative forum. *Jumara*, 55 F.3d at 879. The public interests to be considered include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative court congestion of the two fora; (4) the local interest in deciding local controversies at home; (5) the public policies

17

of the fora; and (6) judge familiarity with the applicable state law.  *Jumara*, 55 F.3d at 879-80.

*Idasetima v. Wabash Metal Products, Inc.*, No. Civ. A. 01-197 (WY), 2001 WL 1526270, *1 (E.D. Pa. Nov. 29, 2001).

Ordinarily, a plaintiff's choice of forum is entitled to deference.  *See, e.g., Idasetima v. Wabash Metal Products, Inc.*, 2001 WL 1526270, *2.  However, there is no entitlement to such deference, where, as here, the plaintiff, by way of a forum selection clause, has already contracted that such litigation be brought in another venue.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995).  *See also, e.g., Barbuto v. Medicine Shoppe Intern., Inc.*, 166 F.Supp.2d 341, 349 (W.D. Pa. 2001); *Nemo Associates, Inc. v. Homeowners Marketing Services Intern., Inc.*, 942 F. Supp. 1025, 1028 (E.D. Pa. 1996).  Each of the pertinent agreements between Mr. Wild and Jungle Interactive Media, including the agreement attached as Exhibit A to the Complaint, contains the following provision as Paragraph 7.4:

> 7.4    <u>Governing Law</u>.**This Agreement shall be governed by and construed under the laws of the State of New York, without regard to conflicts of laws provisions thereof.  Any disagreements or disputes arising under this Agreement shall be exclusively resolved in state or federal courts located in New York, New York.

Complaint, Exhibit A; Housman Decl. ¶ 2, Exhibit 2.

Given its application to "[a]ny disagreements or disputes arising under this Agreement," the parties' forum selection clause in Paragraph 7.4 of their agreements applies not only to breach of contract actions immediately based on the agreements but to claims such as plaintiff's tortious interference claims that arise from the agreements between Mr. Wild and Jungle Interactive Media and implicate its terms.

As the foregoing discussion in Part I on the merits of plaintiff's tortious interference claims makes clear, plaintiff's claims arise from a disagreement between the parties over their respective

18

rights to republish Mr. Wild's articles under their agreements. The parties' respective positions in this litigation are based on differing positions on the meaning of Paragraphs 4.1 and 5.1 of the agreements. If defendants had a good faith basis for their position on the meaning of Paragraphs 4.1 and 5.1, then there is no basis for plaintiff's claims because defendants simply acted in their economic interest and without any wrongful means in notifying McGraw-Hill of Jungle Interactive Media's rights under its agreements with Mr. Wild. Conversely, if plaintiff's interpretation of Paragraphs 4.1 and 5.1 is not merely correct but so self-evident that defendants could not have had even a good faith basis for advancing their own position, then there might be a basis for plaintiff's claims. Plaintiff's claims thus clearly require, as the parties' forum selection clause provides, that the parties' "disagreements or disputes arising under this Agreement" be "resolved." Accordingly, plaintiff was contractually obligated under that clause to bring this action only "in state or federal courts located in New York, New York," where, according to the clause, such "disagreements or disputes arising under this Agreement shall be exclusively resolved."

That the parties' "Governing Law" provision applies not merely to breach of contract claims but to torts and other claims arising from, implicating, or requiring the interpretation of the agreement is sustained by numerous decisions involving such forum selection clauses. The basic principle is that a forum selection clause will apply to noncontractual claims "if the claims asserted arise out of the contractual relation and implicate the contract's terms." *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988). Thus, in the *Crescent Int'l* case, the Court of Appeals held that a forum selection clause providing that "any litigation upon any of [the agreement's] terms … shall be maintained in" Miami, Florida courts applied to plaintiff's claims of RICO violations, fraud, conversion, unfair competition and tortious interference with plaintiff's business relationships. *Id.*, 857 F.2d at 944. Similarly, in *Coastal Steel Corp. v. Tilghman*

19

*Wheelabrator, Ltd.,* 709 F.2d 190 (3d Cir.), *cert. denied,* 464 U.S. 938 (1983), the Court of Appeals held that both tort and contract claims were governed by a forum-selection clause that provided that certain contractual "conditions shall be construed in accordance with English law" and that "[i]n the event of any dispute arising the same shall be determined by the English Courts of Law." *Id.,* 709 F.2d at 193, 203.  Similarly, in *VERSAR, Inc. v. Ball*, No. Civ. A. 01-1302, 2001 WL 818354 (E.D. Pa. July 12, 2001), the court held that a forum selection clause providing that "all the disputes arising out of this Contract involve a Federal question and shall be resolved in [the Southern District of Indiana]" applied to numerous noncontractual claims, including interference with contractual relationships, because the disputes arose out the contract and "resolution of the claims relates to interpretation of the contract." *Id.,* 2001 WL 818354, *1, *2 & n.7.  Similarly, in *Giordano v. Witzer*, 558 F. Supp. 1261 (E.D.Pa. 1983), the court held that the forum selection clause in the parties' sale agreement, which provided that "for the purpose of disputes arising under the terms hereof, the parties hereto vest exclusive jurisdiction upon the Court of Common Pleas of Delaware County, Pennsylvania," applied to plaintiff's suit for "conspiracy to defraud."  The court explained: "The forum selection clause applies to 'disputes' arising under the agreement of sale. It is not limited to actions for breach of contract. Examining the allegations of the complaint, it is readily apparent that several of the alleged overt acts done in the furtherance of the conspiracy relate to promises made in the agreement or to representations made during the negotiation of the agreement." *Id.,* 558 F. Supp. at 1264.

    As in *Crescent Int'l*, *Coastal Steel Corp.*, *VERSAR* and *Giordano*, the parties' forum selection clause in Paragraph 7.4 likewise requires venue in the selected venue because plaintiff's

claims must similarly be understood to involve "disagreements or disputes arising under this Agreement."[6]

A forum selection clause such as the parties' in Paragraph 7.4 "is entitled to substantial consideration"; and "deference" to the plaintiff's choice of forum becomes "inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." *Jumara v. State Farm Ins. Co.*, 55 F.3d at 880. *See also, e.g., Barbuto v. Medicine Shoppe Intern., Inc.*, 166 F.Supp.2d at 349; *Nemo Associates, Inc. v. Homeowners Marketing Services Intern., Inc.*, 942 F. Supp. at 1028. Instead, as this Court has set forth, a forum selection clause is "presumptively valid" and will be enforced in the absence of three factors (none of which is present here):

> Adopting the federal common law standard established by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972), the Third Circuit announced that:
>
>> a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

*Jordan v. SEI Corp.*, No. Civ. A. 96-1616 (WY), 1996 WL 296540, *5 (E.D. Pa. Jun. 4, 1996) (*quoting Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d at 202). Similarly, in *Foster*

---

[6]     In addition, the natural presumption concerning the two sentences in the parties' "Governing Law" clause is that the set of matters to which the exclusive jurisdiction of New York courts applies by virtue of that clause is commensurate with the matters to which New York law applies by virtue of that same clause.   There is no question, under Paragraph 7.4's provision that the parties' agreements shall be "governed by and construed under the laws of New York," Complaint, Exhibit A, that New York law governs plaintiff's claims in this action.   As this Court explained with respect to the identical language at issue in another action, "The word 'and' is the pivotal term because it indicates that the words 'governed by' envision claims other than those sounding in contract law, which are adequately covered by the language 'construed in accordance with.'" *Corestates Bank, N.A. v. Signet Bank*, No. Civ. A. 96-3199 (WY), 1996 WL 482909, *5 n.3 (E.D. Pa. Aug. 26, 1996).

*v. Chesapeake Insurance Company, Ltd.,* 933 F.2d 1207 (3d Cir.1991), the Court of Appeals for the Third Circuit explained the test to be applied in determining whether to enforce a forum selection clause:

> In *The BREMEN v. Zapata Off-Shore Co.,* … the Supreme Court held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. at 1913. A forum selection clause is "unreasonable" where the [party] can make a "strong showing," *Id.* at 18, 92 S.Ct. at 1917, *either* that the forum selected is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court," *Id.* at 18, 92 S.Ct. at 1917, *or* that the clause was procured through "fraud or overreaching," *Id.* at 15, 92 S.Ct. at 1916.

*Foster v. Chesapeake Insurance Company, Ltd.,* 933 F.2d at 1219.  *Accord*: *Barbuto v. Medicine Shoppe Intern., Inc.*, 166 F.Supp.2d at 346; *Stone Street Services, inc. v. Breaux*, No. Civ. A. 00-1904, 2000 WL 876886, *2, 3 (E.D. Pa. Jun. 19, 2000); *Cardinal Business Media, Inc. v. Rockpress Pub. Co.*, No. Civ. A. 96-3872, 1996 WL 729943, *2 (E.D. Pa. Dec. 11, 1996); *Nemo Associates, Inc. v. Homeowners Marketing Services Intern., Inc*., 942 F. Supp. at 1028; *Burger King Corp. v. Stroehmann Bakeries, Inc.,* 929 F. Supp. 892, 893-94 (E.D. Pa. 1996).

Plaintiff does not allege, nor would there be any basis for him to allege, that his agreements with Jungle Interactive Media were the product of "fraud or overreaching."  Nor is there anything in the Complaint or in the facts surrounding this litigation to support any claim that venue in the Southern District of New York would be "unreasonable" or "so gravely difficult and inconvenient that [Mr. Wild] will for all practical purposes be deprived of his day in court." *Foster v. Chesapeake Insurance Company, Ltd.,* 933 F.2d at 1219.  To the contrary, the other factors generally applicable to §1404(a) motions are either neutral as between this District and the Southern District of New York or, with respect to three such factors, tip the balance even further in the direction of New York.

22

The factor of the convenience of the parties clearly favors defendants' motion. Both of the likely witnesses for defendants, Mr. Housman and Vince Bielski, *MBA Jungle*'s Editor-in-Chief, work in New York City and reside in New York City and Brooklyn, New York, and venue in the Southern District of New York is obviously more convenient for them than venue in Philadelphia, 95 miles away. Housman Decl. ¶ 4. By contrast, plaintiff resides in Allentown, 63 miles from Philadelphia and 87 miles from New York City, so venue in New York is only slightly more inconvenient for him than venue in Philadelphia.

The principal third-party witnesses, *i.e.*, employees or representatives of The McGraw-Hill Companies, Inc., will probably be residents of either the Chicago area or the New York City area. Housman Decl. ¶ 5. No such third-party witnesses reside in Pennsylvania.

Under the parties' agreement concerning the "Governing Law," this action is governed by New York law, not only with respect to issues of contractual interpretation and the elements of tortious interference with contractual relations, but also with respect to various other pertinent substantive areas. Accordingly, New York's interest in the interpretation and application of its laws and the familiarity of New York courts therewith further weigh in favor of transfer. *See, e.g., Stone Street Services, Inc. v. Breaux*, 2000 WL 876886, *4 .

There is therefore no reason this Court should not give effect to the parties' contractual agreement. To the extent this action is not dismissed pursuant to Rule 12(b)(6), it should therefore be transferred to the Southern District of New York pursuant to 28 U.S.C. §1404(a).

23

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss the Complaint for failure to state a

claim upon which relief can be granted should be granted, but if the Complaint is not dismissed, this

action should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,

JACOBS, DEBRAUWERE & DEHN LLP

By:_____
          Barbara J. Lipshutz, Esq.
          Pennsylvania Bar # 45219
          445 Park Avenue 17th Floor
          New York, New York 10022
          Attorneys for Defendants Jungle Interactive Media,
          Inc. and John Housman

Dated:  August 12, 2002
          New York, New York

Of counsel:
Robert J. deBrauwere
John F. Burleigh

24