IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | |
|---|---|
| RUSSELL WILD,<br>　　　　　　PLAINTIFF<br><br>　　VS.<br><br>JUNGLE MEDIA GROUP AND<br>JON J. HOUSMAN,<br>　　　　　　DEFENDANT | NO. 02-CV-5123 WY |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) OR, IF THE COMPLAINT IS NOT DISMISSED, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

## I.　　PRELIMINARY STATEMENT

This action arises from Defendant's tortious interference with Plaintiff's contract with Publisher McGraw Hill for the publication of a book to be authored by Plaintiff, tentatively titled "The Instant MBA".

On or about March 6, 2002, Plaintiff Russell Wild submitted a proposal to Publisher McGraw Hill in its Chicago office for publication of "The Instant MBA". Approximately one-third of the book was to consist of material authored by Plaintiff which had been previously published in Defendant, Jungle Interactive Media Inc.'s magazine, *MBA Jungle*. Plaintiff and McGraw Hill entered into negotiations and, by mid-March, had resolved all drafting issues and reached a final agreement on the terms of an Author Agreement. At that point, McGraw Hill was prepared to issue final signing copies of the contract.

At some point in mid-March 2002, Plaintiff received a telephone call from the new editor of *MBA Jungle*, Vince Bielski. Mr. Bielski advised Plaintiff that he had learned of Plaintiff's pending McGraw Hill contract and made the claim that publication of the book by McGraw Hill would

constitute a breach of Plaintiff's contracts with Defendant, Jungle Interactive Media, relating to those articles originally authored by Plaintiff for publication in *MBA Jungle*.

In response, Plaintiff advised Mr. Bielski, who had not been the editor at the time Plaintiff negotiated the agreements with Defendant, Jungle Interactive Media, that the grant of rights provision set forth in Section 5.1, relied upon by Mr. Bielski, had been negotiated only to prohibit republication of *MBA Jungle* content authored by Plaintiff in a competitive magazine or website and that the understanding and clear intent of the parties was that Plaintiff was free to author and publish a book incorporating all or part of the previously published *MBA Jungle* content.

Following Mr. Bielski's telephone conversation with Plaintiff, counsel for Plaintiff forwarded a letter to Mr. Bielski advising that Defendant, Jungle Interactive Media's reliance on Section 5.1 of the Author Agreement was misplaced.  Rather than responding to Plaintiff or counsel for Plaintiff, counsel for Defendant instead forwarded a letter on March 15, 2002, to McGraw Hill and McGraw Hill's legal department.  In that letter, counsel for Defendant cited Section 5.1 of the aforementioned contract as support for Defendant, Jungle Interactive Media's position that Plaintiff had no right to reuse any *MBA Jungle* published material in a book without Defendant Jungle's prior written permission.  Counsel for Defendant also threatened McGraw Hill with a lawsuit if it published said book.

On March 19, 2002, Defendant, Jon J. Housman, publisher of *MBA Jungle*, telephoned Plaintiff's Chicago based editor at McGraw Hill, Danielle Egan-Miller.  Defendant Housman contacted Ms. Egan-Miller to propose a business relationship between McGraw Hill and Jungle Interactive Media whereby Jungle Interactive Media would author a book on business tips substantially similar to the one which was already the subject of contract negotiations between Plaintiff and McGraw Hill.  At the same time, in conversations with Plaintiff, Defendant Housman also asserted proprietary rights in the underlying concept of Plaintiff's proposed book above and

beyond Defendant, Jungle Media Group's alleged contractual rights regarding previously published *MBA Jungle* content authored by Plaintiff. Specifically, Defendant Housman advised Plaintiff that he wanted Jungle Interactive Media to publish Plaintiff's book and that Plaintiff should sever his relationship with McGraw Hill.

After learning of Defendant Housman's unsolicited telephone call to McGraw Hill and his attempt to terminate Plaintiff's contractual relationship with McGraw Hill, counsel for Plaintiff contacted counsel for Defendant, Jungle Interactive Media and advised that Plaintiff considered such communication to be tortious interference. In response, counsel for Defendant falsely asserted that Defendant Housman had communicated with McGraw Hill only to reassure McGraw Hill that the letter of March 15, 2002, from counsel for Defendant "did not reflect any acrimony between *MBA Jungle* and McGraw Hill." In addition, counsel for Defendant asserted that Defendant Jungle Interactive Media's position was that, pursuant to the restrictions set forth in Plaintiff's Freelance Agreements, he "has no right to enter into any contracts regarding the 'What B School Didn't Teach Me' . . .". Indeed, on March 25, 2002, McGraw Hill expressed concern to Plaintiff that Defendant Jungle Interactive Media was claiming proprietary rights in Plaintiff's business school column concept and that Plaintiff had no right to author anything based on that or a similar concept. Thereafter, on or about March 30, 2002, McGraw Hill advised Plaintiff that given the threat of litigation by Defendant Jungle Interactive Media, McGraw Hill would not proceed with publication of Plaintiff's book, absent written assurances from Defendant Jungle Interactive Media that it would not institute litigation against McGraw Hill if it published the Instant MBA.

To date, despite numerous requests from Plaintiff, Defendant Jungle Interactive Media has failed and or refused to provide such assurances.

## II.    <u>ARGUMENT</u>

Defendants Motion to Dismiss Pursuant to Federal Rule Civil Procedure 12(b)(6) should be denied because Defendant's motion fails to demonstrate beyond doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  In re <u>Meridian Securities Litigation</u>, 772 F.Supp. 223 (E.D. Pa. 1992).

Defendants argue that Plaintiff's complaint should be dismissed for failure to state a claim on the theory that Defendants cannot be liable for tortious interference with prospective contractual relations because, on the face of the complaint itself, Defendants were motivated by economic interest and employed no wrongful means.  Defendants then analyze Plaintiff's tortious interference with prospective contractual relations claim under New York law on the theory that New York law, applies because Plaintiff and Defendant, Jungle Interactive Media expressly stipulated in Paragraph 7.4 of the Freelance Author Agreement, that those Agreements "shall be governed by and construed under the laws of New York…" See Complaint, **Exhibit "A"**.  Preliminarily, Plaintiff does not concede that New York law applies to his tortious interference with prospective contractual relations claims here.  Instead, according to <u>Corestates Bank, N.A. v. Signet Bank</u>, 1996 WL 482909 (E.D. Pa 1996), a court should analyze the choice of law provision to determine whether, based on its narrowness or breadth, the parties intended it to encompass all elements of their association.  Id. *5, citing <u>Jiffylube International, Inc. v</u> <u>Jiffylube of Pennsylvania, Inc</u>., 848 F. Supp. 569 (E.D. Pa 1994).  In <u>Corestates</u>, the tort claims analyzed by the court were much more closely related to the underlying contract than is the case here.  Specifically, the tort claims in <u>Corestates</u> involved fraud and therefore directly implicated a remedy set forth in the contract itself; namely, Recission. <u>Id</u> *5, FN 3.  By contrast, Plaintiff's claim here is for tortuous interference with prospective contractual relations, and has no direct relationship to Plaintiff's Author Agreements with Defendant, Jungle Interactive Media.  Plaintiff's tort claim does "not directly assail the validity

of the contract." Id. Instead, Defendants have raised the Author Agreement as a defense, albeit, to Plaintiff's claim. Accordingly, Defendant should not be permitted to use the choice of law provision to challenge the sufficiently of the contentions set forth in Plaintiff's complaint. To the extent that Defendants' Motion to Dismiss fails to analyze the affect of Pennsylvania law on this portion of Plaintiff's claim, the Motion is deficient and should, therefore, be dismissed.

Even assuming, arguendo, that New York law applies, Defendants' Motion to Dismiss should still be denied because Plaintiff's complaint clearly sets forth the requisite elements of a claim for tortious interference, even under that state's substantive law.

It is well established that a complaint should not be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his or her claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41 (1957); Instrumentation Associates, Inc. v. Madsen Electronics, (Canada) Ltd., 859 F.2d 4 C.A.3 (Pa.) 1988. Thus, the question before the Court on a Motion to Dismiss is whether the Plaintiff can prove any set of facts in support of his claims that will entitle him to relief, not whether he will ultimately prevail. Ferry v. Mutual Life Insurance Co. of New York, W.D. Pa., 1994, 868 F.Supp 764.[1] Under New York law, a Defendant becomes liable for tortious interference with a Plaintiff's business relations when: there is a business relationship between Plaintiff and the third party; Defendant, knowing of that relationship, intentionally interferes with it; Defendant acts with the sole purpose of harming Plaintiff, or, failing

---

[1] It should be noted that Defendant's have arbitrarily included with their 12(b)(6)Motion affidavits which are not part of the pleadings. When a party submits affidavits or other evidence in connection with a Motion to Dismiss, the Court has two options: it may exclude the additional material and decide the motion on the basis of the complaint alone, or it may convert the motion to a Warrant for Summary Judgment and give all parties an opportunity to present supporting material. Marilyn Migilyn, Inc. v. Gottex Industries, Inc., 790 F Supp. 1245 (S.D. N.Y. 1992). Plaintiff opposes Defendant's attempt to dispose of this matter on a Motion of Summary Judgment at this stage and requests that Honorable Court exclude and disregard the additional materials submitted by Defendant. In the event this Court elects to consider said material and to treat Defendant's Motion to Dismiss as a Motion for Summary Judgment, Plaintiff respectfully requests an opportunity to present supporting material and to file an Amended Response.

that level of malice, uses dishonest, unfair, or improper means; and the relationship is injured. Protic v. Dengler, 46 F.Supp. 2d 277 (S.D.N.Y. 1999).

The sole issue in dispute here is whether Plaintiff's complaint, on its face, sets forth contentions sufficient to meet the third prong of that test; whether Defendant acted with the sole purpose of harming Plaintiff, or, failing that level of malice, used dishonest, unfair, or improper means.

At this stage, even when no discovery has taken place, Plaintiff's complaint contains several contentions sufficient to make out a claim that Defendant acted with the sole purpose of harming Plaintiff. Specifically, as Plaintiff alleges in his complaint, Defendant did more than simply send notice through their counsel to McGraw Hill that McGraw Hill's publication of Plaintiff's book violated Defendant, Jungle Interactive Media's purported contractual rights pursuant to the Author Agreements entered into previously by Plaintiff and Defendant, Jungle Interactive Media. Instead, as Plaintiff's complaint sets forth at Paragraphs 21 and 28, Defendant Housman actually called Plaintiff's editor at McGraw Hill and attempted to persuade her to renege on the deal for Plaintiff's book and instead enter into a similar deal with Defendant Jungle Interactive Media. Defendant Housman then attempted to convince Plaintiff that Defendant, Jungle Interactive Media had proprietary rights in the underlying concept of Plaintiff's proposed book and that Plaintiff should publish the book with Jungle Interactive Media and sever his relationship with McGraw. The implication is clear. Defendant Housman was, in effect, warning Plaintiff that the only way Plaintiff could ever publish such a book would be to do so through Defendant, Jungle Interactive Media. Defendant Housman's statement is clearly suggestive of malicious intent toward Plaintiff when considered in view of the very Author Agreement that Defendants here attempt to rely upon. That Agreement, at Section 4.1, clearly precludes Jungle Interactive Media from publishing such a book without Plaintiff's express consent. In essence, Defendants were clearly attempting to strong-

arm Plaintiff into granting them rights which they did not otherwise have by threatening him with litigation.

Considered in the light most favorable to Plaintiff, those allegations, standing on their own, constitute a contention that Defendants acted with the sole purpose of harming Plaintiff to the extent that they knew full well that the Defendants would need Plaintiff's permission to publish their own book of his columns and that, because of events to date, Plaintiff would never agree to such an arrangement. In short, given the threat of litigation by Defendants and Plaintiff's response thereto, which proceded Defendant Housman's call to Danielle Egan-Miller at McGraw Hill, Defendants knew or should have known that Plaintiff was committed to his contractual relationship with McGraw Hill and would never provide the permissions needed by Defendants to publish a book of Plaintiff's columns pursuant to Section 4.1 of the Author Agreement. Moreover, Defendant Housman's assertion that Defendant, Jungle Interactive Media had proprietary rights to the very concept underlying Plaintiff's column was clearly a threat to Plaintiff that he should not attempt any publication of such a book and that the only way that he could do so would be to grant Jungle Interactive Media the permission it needed under Section 4.1 of the Author Agreement to undertake publication itself.

Defendants' argument that Plaintiff's complaint fails to make out a claim for tortious interference rests almost entirely upon the contention that all of the actions complained of by Plaintiff in his complaint were reasonable when viewed in the context of the scope of rights granted to Defendant, Jungle Interactive Media in the Author Agreement executed by Plaintiff and as set forth in Section 5.1 therein. In short, Defendants claim that Plaintiff is unable to produce evidence of actual malice at this preliminary stage of litigation and that Defendants were motivated by a reasonable non-frivolous view of their rights under the Agreement with Plaintiff. Defendants' self-serving assertion is conclusionary and begs the point. Defendant, Jungle Interactive Media drafted

7

the contract in question, which is a first publications on-going rights agreement rather than an "all rights" agreement.  Indeed, Plaintiff has alleged, clearly and unequivocally, that the parties intended that Section 5.1 preclude Plaintiff only from republishing with a competitive publication.

Defendant argues that the clause is clear and unambiguous and that the intent of the parties is irrelevant.  Defendant's argument in this regard, however, disregards the fundamental principles of contract interpretation and makes a mockery of the elementary principles of syntax.

Section 5.1, in its entirety reads;

(a)    Writer is free to advertise, solicit business and contract to provide services to other persons and businesses.  In addition to restrictions during the exclusivity period, Writer shall not authorize the use of the article, at any time, in any publication, web site or any other means of distribution by any business-oriented web site or print publication, without the prior written permission of the Editor-in-Chief.

Section 5.1 of the Agreement, when read in context with the broader grant of rights set forth in Section 4, creates only a narrow restriction on Plaintiff's right to republish the articles in question.  Specifically, Section 4.1 (a) grants Defendant, Jungle Interactive Media, a brief period of exclusivity with respect to publication of the article.  Section 4.1 (a) further provides Defendant with additional rights:  it prohibits the writer or anyone else to publish or use the article or any portions thereof in any medium until after the expiration of the exclusivity period.  Then, in Section 5.1, an additional restriction is imposed upon Plaintiff - - a non-compete provision of sorts.  Specifically, the Plaintiff is prohibited from authorizing use of the article, at any time, "in any publication, web site or other means of distribution by any business-oriented web site or print publication, without the prior written permission of the Editor-in-Chief." (Emphasis added.)

8

Defendant argues that the clauses are clear and unambiguous.  This is not entirely true.  For example, the critical terms "any business-oriented web site or print publication" are not defined in the Agreement.  On its face, the clause suggests, but does not clearly state, a limitation on re-publication by a business-oriented publication (i.e., a competitor of *MBA Jungle*, a business-oriented magazine or web site).  More importantly, Defendants' explanation of Section 5.1 is bizarre.  Confronted with the consequences of their own drafting, Defendants now attempt to parse out Section 5.1 in order to separate "business-oriented web site or print publication" as a separate entity, rather then as a modifier of the proceding nouns "publication," "web site" or "other means of distribution."  The phrase "or other means of distribution," follows the terms "publication, web site" and is clearly meant to qualify them.  In other words, Section 5.1 applies to a broad range of media by which information can be disseminated and requires that where such distribution is made by "any business-oriented web site or print publication," prior permission from the Editor-in-Chief is required.  Indeed, the word "or" is plainly used to set forth a set of alternatives:  the singular and particular "publication" and "web site" and the plural in general "other means of distribution."  To admit the Defendants' interpretation, one must disregard entirely the word "other" which clearly links "means of distribution" back to "publication" and "web site."

Thus, to the extent that Section 5.1 can be deemed to have a clear meaning, that meaning is to require permission by *MBA Jungle*'s Editor-in-Chief before Plaintiff can authorize reuse of his articles by business-oriented web site or print publications, regardless of whether dissemination or reuse occurs via a publication, web site or other means of distribution.

The next question is what effect the repetitive reference to "publication" and "web site" has on the other all meaning of the clause.  Defendants desperately wrack the syntax of Section 5.1 here because they clearly do not want to have to address the question of whether McGraw Hill is a

9

"business-oriented web site or print publication."[2]  Clearly, the repetitive use of the terms is used to

meant to distinguish the act of publication from the agent of such publication.  Read in context,

Section 5.1 makes sense if understood to preclude reuse by any business-oriented web site or

printed publication of the columns in any publication, web site or other means of distribution.

Accordingly, the scope of the prohibition on the medium of reuse is extremely broad while

the prohibition on the agent of such reuse is properly narrow.  It applies only to a narrow cross-

section of publications.  Plaintiff's complaint alleges that the parties intended that this phrase apply

to competitor publications of *MBA Jungle.*  Assuming arugendo that Section 5.1 is ambiguous,

extrinsic evidence regarding the intent of the party will be needed to construe it.  Plaintiff's

complaint alleges that the parties intended that this phrase apply only to competitor publications.

This makes sense. It explains without straining ordinary rules of grammar or principles of contract

interpretation.  The meaning and scope of Section 5.1 is, essentially, a sensibly narrow non-compete

provision.

Defendants' reading, however, would make any person or entity who publishes Plaintiff's

book a "business-oriented publication".  The effect would be to extend absolutely the exclusivity

period set forth in Section 4.1.  In short, Plaintiff would not be permitted to republish or authorize

anyone else to republish his columns.

Interestingly, Jungle also misstates the scope of its rights, and, perhaps inadvertently, reveals

the extent of its malicious intent towards Plaintiff when it claims on Page 9 of its Brief that it has

---

[2] While Defendant manages to spin out the legal equivalent of a shaggy dog story with a long "illustrative" list of all the business related text published by McGraw Hill (but not part of the pleadings and therefore not to be considered in a ruling on Defendant's Motion to Dismiss, Defendant's fail to note that McGraw Hill is a publisher of books on many in varied topics including, but not limited to business texts, and is therefore, first, not a business oriented publisher, and second, and most importantly, not a "business oriented web site or print publication".  While badly drafted by Defendant's, Section 5.1 only makes sense if it is read as a narrow non-compete provision intended to protect Defendant, Jungle Interactive Media's publication MBA Jungle from competitor magazines or web sites publications of the same articles.  Moreover, by Defendant's twisted logic, the mere act of publishing Plaintiff's purposed book is sufficient to transform the publisher into a business oriented web site or print publication.  The effect of that strange interpretation is to effectively preclude Plaintiff from ever republishing his articles without Defendant, Jungle Interactive Media's prior written permission.

the right to publish the very book Plaintiff negotiated with McGraw Hill. (See Defendant's Brief at 9). To the contrary, Section 4.1 of the Author Agreement relied upon by the Defendants prohibits such publication. Defendants knew very well that Plaintiff's book with McGraw Hill was a book of his own material and they had no right under the contract to publish such a book without Plaintiff's consent. Defendants' willful and repeated failures to acknowledge Plaintiff's contractual and intellectual property rights, as alleged in Plaintiff's complaint (See Paragraphs 18, 20, 22, 23, 25, 28, 30-35) are ample proof of their malice toward Plaintiff. Defendants' claim that they were motivated by "economic interest" is self-serving and boot strapping of the worst sort. Defendants saw a business opportunity they wanted for themselves, that they had no legitimate right to claim. In an effort to strong arm Plaintiff into granting them rights they did not otherwise have any hope of obtaining, Defendants scuttled his relationship with McGraw Hill, expecting that deprived of any other business opportunities, Plaintiff would have no choice but to deal with them. In short, to the extent that Defendants claim they were motivated by "legitimate economic interests," they are operating on an economic model akin to that advocated by fictional character Gordon Gecko in the movie Wall Street ("Greed is good").

The pleadings are devoid of any contention that Defendants were independently contemplating a similar book which did not rely on Plaintiff's material. Certainly they never approached Plaintiff with the idea. Instead, as Plaintiff's complaint alleges, once Defendants learned of the pending book deal, they rushed to destroy it and then attempted to extort Plaintiff by implying that he could avoid litigation if he granted them the publishing rights. Defendants' claims that they also have legitimate economic interests in negotiating with McGraw Hill are ludicrous. The mere fact that Defendants could never deliver such a book is evidence that their communications with McGraw Hill were not good faith efforts to pursue a legitimate business relationship but were instead intended solely to kill Plaintiff's deal and to harm him.

11

Defendants also contend that, in addition to failing to make out a contention that they acted with malice, Plaintiff's allegations fail to aver other "wrongful means". (See Defendant's Brief at Page 15). Defendants misread and misunderstand Plaintiff's complaint on this point as well.[3] Because Defendants claim their reading of the contract is the right one, and because Defendants also claim that said Agreement is in no way ambiguous, Defendants believe they can disregard the intent of the parties informing this contract. Plaintiff's complaint, however, states on its face something quite different.

First, Section 5.1, on its face, did not preclude Plaintiff's deal with McGraw Hill and the Defendants knew and should have known that from the plain language of the clause. Second, and alternatively, in the event that this Court concludes that the clause is ambiguous, said ambiguity should be construed against Defendants, who were the scriveners of the document. If ambiguous, evidence of the parties' intent is needed, and it has been pleaded that Defendants, based on the negotiations between Plaintiff and the former Editor of *MBA Jungle*, knew clearly and unequivocally, that the contract was not intended to preclude the book deal at issue here. In either event, Plaintiff's complaint more than sufficiently makes out a claim that Defendants acted dishonestly or used unfair means in their official and surreptitious communications with McGraw Hill. In short, the allegations set forth in Plaintiff's complaint satisfy the dishonest, unfair and wrongful means element of the New York tortious interference cause of action insofar as Plaintiff alleges, in no uncertain terms, that with respect to Defendants' claimed contractual rights, they did not in fact entertain, nor could they reasonably have entertained, the view they expressed.

---

[3] It should be noted that Plaintiff's complaint was originally drafted for filing in the Court of Common Pleas of Lehigh County, Pennsylvania and set forth a claim for tortious interference with prospective contractual relations under Pennsylvania law. It is Plaintiff's contention that the allegations set forth in its complaint also serve to make out a claim for tortious interference with prospective business relations under New York law and that said contentions are, in any event, sufficient to withstand a 12(b)(6) Motion under the Federal Rules. In the event that this Court determines that a revised pleading is necessary in order to address the elements of a New York tortious interference, Plaintiff requests the right to amend accordingly.

Therefore, there was clearly an element of deceit in Defendants' behavior.  See Protic v. Dengler, 46 F. Supp.2d 277 (S.D.N.Y.), aff'd, 205 F.3d 1324 (2nd Cir. 1999).

     In short, the allegations set forth in Plaintiff's complaint, while not using the express terms "dishonest, unfair or improper means", clearly contend that Defendants' actions were exactly that. Specifically, Defendants engaged in a scheme to terminate Plaintiff's business deal with McGraw Hill based on an interpretation of an Author Agreement that Defendants knew did not support their position.  Furthermore, in contrast to Multivideo Lab v. Intel, 2000 WL 12122 (S.D.N.Y.) (cited by Defendants), Plaintiff does not acknowledge anywhere in his complaint that Defendant, Jungle Interactive Media had any intent to promote its own economic interests.  See Id.* 18.  Instead, Plaintiff alleges that Defendant, Jungle Interactive Media could not and knew it could not publish the book contemplated here.  Accordingly, Plaintiff's complaint sets forth quite clearly that Defendants could not have acted with a legitimate interest to promote competing economic interests when they acted as described above.  Acts consistent with a desire for economic gain must have a basis in legitimacy.  Missigman v. USI Northeast Inc., 131 F.Supp.2d 495 (S.D.N.Y. 2001).  To say otherwise would be akin to saying antitrust violations or manipulations of the energy market are not dishonest, unfair or improper because they were pursued, undoubtedly, for economic gain.  As Plaintiff's complaint makes clear, Defendants' threatened litigation against Plaintiff and McGraw Hill was in bad faith because they did not, and could not reasonably have had, belief in the merit of that litigation.

     Indeed, Defendants' bad faith is further evidenced by the fact that, as alleged in Paragraphs 30 and 31 of Plaintiff's complaint, Defendants then rushed to publish previously unpublished articles by Plaintiff submitted to Defendant, Jungle Interactive Media, in clear violation of the terms of the Author Agreement, solely for the purpose of attempting to prevent Plaintiff from republishing those pieces as well by triggering a new exclusivity period. Thus, the backdrop of disputes over

payment for articles and Defendants' outrageous behavior in violating Plaintiff's intellectual properties rights as alleged in Plaintiff's complaint, should also be considered insofar as those contentions demonstrate animosity and apparent malice by Defendants toward Plaintiff.

For all of the foregoing reasons, Defendants' Motion to Dismiss should be denied.

(B)    Defendants' Motion to Transfer Venue Pursuant 28 U.S.C. Section 1404(a) should be denied.

Defendants argue, in the alternative, that in the event their Motion to Dismiss is denied, the case should be transferred to the United States District Court for the Southern District of New York. Defendants' argument in this regard depends on a forum selection clause in the Author Agreements between Plaintiff and Defendants. Defendants claim, erroneously, that Plaintiff expressly agreed that this particular action must exclusively be brought in New York Courts. (See Defendant's Brief at Page 17).

Pursuant to 28 U.S.C. Section 1404(a), a plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of the movant. Figgie International, Inc. v. Destiliria Serralles Inc., 925 F. Supp. 411 (D.S.C. 1996). Even if such a transfer would benefit the Defendants significantly, a Court should not grant the Motion if the net result would merely be to shift the inconvenience to the Plaintiff. Burstein v. Applied Extrusion Technologies, Inc., 829 F. Supp. 106 (D Del. 1992); Bolles v. K-Mart Corp., 2001 WL 767605 (E.D. Pa. 2001). The moving party bears the burden of showing that a balancing of the pertinent factors weighs in favor of transfer. Tyler v. Rental Service Corp., 2002 WL 192590 (E.D. Pa. 2002).

Tellingly, Defendants' arguments on the general considerations governing the Section 1404 transfer are brief and mentioned almost as an afterthought. Defendants concede that their own witnesses are employees who reside in New York City. However, that fact alone is not sufficient to justify a transfer in venue. A corporation is better able to absorb the financial costs of

litigating outside its home forum, and, to the extent its key witnesses are employees, they can be persuaded to appear in Court outside of the home forum.  See Anderson v. Century Products Co. 943 F. Supp. 137 (D.N.H. 1996).  Indeed, the relative financial strength of the parties to absorb the costs of litigation is a valid consideration in the transfer of venue analysis.  Ashmore v. Northeast Petroleum Dive of Cargill, Inc. 925 F. Supp. (D.M.E. 1996); Lappe v. American Honda Motor Co. Inc., 857 F. Supp. 222 (N.D.N.Y. 1994).  Here, Defendants are certainly better able to bear the costs of litigation in Pennsylvania - - certainly more so than Plaintiff would be able to handle the costs of litigation in New York.

The only third party witness identified by either party thus far is a McGraw Hill employee, Danielle Egan-Miller, who, upon information and belief, works and resides in Chicago, Illinois.  Relatively speaking, travel from Chicago to Philadelphia is no more inconvenient than travel from Chicago to New York and, taking traffic into consideration, the trip from the Philadelphia International Airport to the United States District Court for the Eastern District located in Philadelphia will almost certainly be less time consuming than travel to the United States District Court for the Southern District of New York from either Newark International Airport or either of New York City's International Airports.  Given the weakness of the Defendants' arguments on this point, Defendant's Motion for a Transfer of Venue, to the extent that it rests on general considerations, should be denied.

Defendant's principal argument for a change of venue, then, rests again on the Author Agreements previously entered into between Plaintiff and Defendant, Jungle Interactive Media.  Defendants quote Section 7.4 (contained in each pertinent agreement entered into between Plaintiff and Defendant, Jungle regarding publication of his columns and Defendant's Magazine *MBA Jungle*) which reads as follows:

7.4    Governing Law.  This Agreement shall be governed by and construed under the laws of the State of New York, without regard to conflicts of laws provisions thereof.  Any disagreements or disputes arising under this Agreement shall be exclusively resolved in State or Federal Courts located in New York, New York.

See Complaint, **Exhibit "A".**  Focusing on the second full sentence, Defendants claim that Plaintiff's tortious interference claim constitutes a disagreement or dispute arising under that Agreement. (See Defendant's Brief at 19).  This is simply not true.  Instead, those agreements are part of this case only because Defendants have seized upon them as an improbable defense to their otherwise inexcusable conduct here.

A forum selection clause does not oust a competent court of jurisdiction but in its discretion, a court can decline to exercise jurisdiction in the face of such a clause.  Nova Ribbon Products v. Lincoln Ribbon, Inc., 1992 WL 21154 (E.D. Pa. 1992), M/S Bremen v. Zapata Offshore Cove., 47 U.S. 1 (1972).  The forum selection clause at issue here, though, is a narrow one and should not be applied to Plaintiff's tortious interference claim.  Where a forum selection clause is "limited to disputes over the terms of the Agreement or any disputes arising under the Agreement" it should not be construed to include all claims, whether based on contract, tort, or statute.  See Nova Ribbon at *7.  In Ribbon, non-contractual theories of liability.  Id.   It is true, so that in general the federal courts have applied forum selection clauses to tort claims where the clause does not explicitly limit the actions to those arising under or connection with the contract.  See John Wyeth & Brother Limited v. Cigma International Corp., 1919 F. A.3d 1070 (3rd Cir. 1997).  Defendants rely principally upon the Third Circuit's decision in Crescent International Inc. v. Abbottir Communications Inc., 857 F Supp. A.2d 943 (3rd Cir. 1988) to claim that Plaintiff's tortious interference claim is governed by the forum selection clause in question.

Crescent, however, is distinguishable from this case.  First, the tortious interference claim in question there was an ancillary one.  The main claim involved was one of breach of contract,

unquestionably subject to the forum selection clause at issue.  Revisiting the issue in <u>John Wyeth &</u> <u>Brother Limited</u>, the Third Circuit, however, focused on the specific phrasing of the forum selection clause to determine its scope and application.

In <u>John Wyeth</u>, the Third Circuit was faced with a forum selection clause covering "any dispute arising…in relation to "the Agreement". Analyzing that phrase, the Court determined that "to say dispute" arise(s)…in relation to "…Agreement is to say that the origin of the dispute is related to that Agreement, i.e., that the origin of the dispute has some logical or causal connection" to the…Agreement."" Id. 1074.  Thus, the clause in <u>John Wyeth</u> was not limited to disputes growing out of the Agreement insofar as "it applied, not only to disputes arising under or out of that Agreement, but also to those arising <u>in relation to</u> that Agreement." <u>Id.</u>  Finally, the Third Circuit observed that "the phrase 'arising in relation to' is broader than 'arising under.' " <u>Id</u>. 1075.

In this matter, the forum selection clause invoked by Defendants is limited to claims "arising under" the Author Agreement. The Defendants drafted that Agreement and have maintained that Plaintiff is stuck with the forum selection clause of New York, along with Defendants' strained application of Section 5.1 therein. Arguably, Defendants' attempt to avoid an otherwise open and shut tortious interference claim by pointing to purported contractual rights conferred by that Agreement, does suggest that tortious interference claim has, by virtue of Defendants' defense, some logical or causal connection to that Agreement.  But a logical or causal connection created by a strained defense alone is not sufficient.

As the Third Circuit makes clear in <u>John Wyeth</u>, the decision whether to apply a forum selection clause must depend on the language of that clause.  Because Defendants' reliance on Section 5.1 of the Author Agreement discussed above necessarily involves a strained and unsupportable interpretation of the grant of rights set forth therein, Plaintiff's tortious interference claim cannot be said to constitute a disagreement or dispute "arising under" that Agreement.

Defendants' argument that it does "arise under", essentially amounts to a simple tautology. It arises under because they say it does. The rights Defendants claim are found nowhere in the Agreement they claim vests them with the ability to interfere with Plaintiff's right to contract with others, and which they try to invoke to also defeat Plaintiff's choice of forum. These efforts should be denied.

## III.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests this Honorable Court to dismiss Defendant's Motion to Dismiss pursuant to 12(b)(6) and its Motion to Transfer Venue Pursuant to 28 U.S.C. Section 1404(a).


RESPECTFULLY SUBMITTED,

GROSS, MCGINLEY, LABARRE & EATON, LLP

BY: _____
      ALLEN I. TULLAR, ESQUIRE
      ATTORNEY FOR PLAINTIFF
      33 SOUTH 7TH STREET
      P.O. BOX 4060
      ALLENTOWN, PA 18105-4060
      (610) 820-5450
      I.D. #76092

DATE: _____

IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RUSSELL WILD,                                         NO. 02-CV-5123 WY
                    PLAINTIFF

            VS.

JUNGLE MEDIA GROUP AND
JON J. HOUSMAN,
                    DEFENDANT

## ORDER

**AND NOW,** this _____day of August, 2002, upon consideration of Defendants' Motion To Dismiss Pursuant To Rule 12(b)(6) or, in the Alternative, To Transfer Venue Pursuant To 28 U.S.C. § 1404(a) and Plaintiff's Answer in Opposition thereto, it is hereby ordered that Defendants' Motion to Dismiss is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) is denied.

                    BY THE COURT:


                    _____
                                                        J.

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY THAT A COPY OF THE FOREGOING PETITIONER'S MOTION FOR SUMMARY JUDGMENT WAS MAILED BY FIRST CLASS UNITED STATES MAIL, POSTAGE PREPAID, ON THIS _____ DAY OF AUGUST, 2002, UPON THE FOLLOWING:

Barbara J. Lipschutz
JACOBS, DEBRAUWERE & DEHN, LLP
445 PARK AVENUE
NEW YORK, NY  10022

GROSS, MCGINLEY, LABARRE & EATON, LLP


BY: _____
ALLEN I. TULLAR, ESQUIRE
ATTORNEY FOR PLAINTIFF
33 SOUTH 7TH STREET
P.O. BOX 4060
ALLENTOWN, PA 18105-4060
(610) 820-5450
I.D. #76092

DATE: _____

IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUSSELL WILD, | NO. 02-CV-5123 WY |
|           PLAINTIFF | |
| | |
|     VS. | |
| | |
| JUNGLE MEDIA GROUP AND | |
| JON J. HOUSMAN, | |
|          DEFENDANT | |

**PLAINTIFF RUSSELL WILD'S ANSWER TO MOTION BY DEFENDANTS
JUNGLE INTERACTIVE MEDIA, INC. AND JON HOUSMAN TO DISMISS THE
COMPLAINT PURSUANT TO RULE 12 (b)(6) OR, IF THE COMPLAINT IS NOT
DISMISSED, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. SECTION 1404 (a).**

**PLAINTIFF**, Russell Wild, by and through his counsel, Gross, McGinley, LaBarre & Eaton, LLP, replies to Defendants' Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted, or, if the Complaint is not dismissed, transferring the action to the Southern District of New York pursuant to 28 U.S.C. Section 1404(a) and in support thereof; incorporates the accompanying Memorandum of Law and states further as follows:

1.    Denied.  To the extent that the averments set forth in Paragraph 1 refer to a writing, the contents of said document speak for themselves and reference thereto should be made.  By way of further answer, Plaintiff's Complaint set forth sufficient contentions that Defendant acted with malice towards Plaintiff and employed wrongful means in interfering with Plaintiff's contractual relations with McGraw-Hill.

2.    Denied.  It is specifically denied that the forum selection clause relied upon by Defendants is applicable in the instant matter and that it requires transfer to the Southern District of New York.

3.    Denied.  Plaintiff respectfully refer this Court to his accompanying Memorandum of Law in opposition to the Defendants' Motion.


**WHEREFORE**, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss and to Transfer Venue.

RESPECTFULLY SUBMITTED,


BY:  _____
          ALLEN I. TULLAR, ESQUIRE
          ATTORNEY FOR PLAINTIFF
          33 SOUTH 7TH STREET
          P.O. BOX 4060
          ALLENTOWN, PA 18105-4060
          (610) 820-5450
          I.D. #76092


DATE: _____