**JACOBS DEBRAUWERE LLP**
Attorneys for Defendants Jungle Interactive Media, Inc.
and Jon Housman
445 Park Avenue, 17th Floor
New York, New York  10022
(212) 207-8787

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUSSELL WILD, | : | |
| | : | |
| Plaintiff, | : | Civ. A. No. 02-CV-5123-WY |
| | : | |
| - against - | : | |
| | : | |
| JUNGLE MEDIA GROUP and JON J. HOUSMAN, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS JUNGLE INTERACTIVE MEDIA, INC. AND JON HOUSMAN TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) OR, IF IT IS NOT DISMISSED, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a)

## TABLE OF CONTENTS

TABLE OF CASES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 3

I.    COUNTS I AND II IN THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM:  DEFENDANTS CANNOT BE LIABLE FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS BECAUSE, ON THE FACE OF THE COMPLAINT ITSELF, DEFENDANTS WERE MOTIVATED BY A REASONABLE GOOD-FAITH BELIEF IN A LEGALLY PROTECTED INTEREST AND EMPLOYED NO WRONGFUL MEANS. **ERROR!  BOOKMARK NOT DEFINED.**

   A.    On the Face of the Amended Complaint, Defendants' Actions Were Motivated By a Reasonable Good-Faith View of Jungle Interactive Media's Legally Protected Interests Under Its Agreements With Plaintiff and Were Therefore "Privileged." 6

   B.    On the Face of the Amended Complaint, Defendants' Tortious Interference Claims Must Be Dismissed on the Basis of the "Competitor's Privilege." ...................... 16

   C.    Plaintiff's Claim Against Defendant Housman Must, In Any Event, Be Dismissed Because, On the Face of the Complaint, He Was Not Solely Motivated By Malice Toward Plaintiff. ................................................................................................. 19

II.    COUNT III IS ENTIRELY WITHOUT MERIT: ON THE FACE OF THE AMENDED COMPLAINT ITSELF, DEFENDANT JUNGLE RETAINS A PROPRIETARY INTEREST IN ARTICLES THAT WERE PUBLISHED WITHIN ONE YEAR OF THE SIGNING OF THE APPLICABLE AGREEMENTS ......... 19

III.    COUNT IV FOR "CONVERSION" IS LIKEWISE ENTIRELY WITHOUT MERIT ON THE FACE OF THE AMENDED COMPLAINT:  JUNGLE CONTINUES TO HAVE THE RIGHT TO REPUBLISH THE "B-SCHOOL" ARTICLES, THE CLAIM IS OBVIOUSLY A "BREACH OF CONTRACT CLAIM IN DISGUISE," AND NO CAUSE OF ACTION LIES FOR CONVERSION OF INTANGIBLE PROPERTY. ................................................................................................................. 20

IV.    IF THIS ACTION IS NOT DISMISSED, BECAUSE PLAINTIFF EXPRESSLY AGREED IN A FORUM SELECTION CLAUSE THAT ANY SUCH ACTION MUST EXCLUSIVELY BE BROUGHT IN NEW YORK COURTS, THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §1404(a). ....................................................................... 22

CONCLUSION ........................................................................................................... 25

## TABLE OF CASES

*Alexander v. Pennsylvania Dep't of Banking*, No. Civ. A. 93-5510 (WY), 1994 WL 144305 (E.D. Pa. Apr. 21, 1994) ...................................................................................................19

*Avins v. Moll*, 610 F. Supp. 308 (E.D. Pa. 1984), *aff'd*, 774 F.2d 1150 (3d Cir. 1985) .............19

*Bahleda v. Hankinson Corp.*, 228 Pa. Super. 153, 323 A.D.2d 121 (Pa. Super. 1974)...........5, 16

*Buschel v. Metrocorp.*, 957 F. Supp. 595 (E.D. Pa. 1996) ................................................5, 15, 16

*C&C Security Specialists, Inc. v. GTI-Superior, Inc.* , No. Civ. A. 86-1096, 1986 WL 7573 (E.D. Pa. Jul. 1, 1986)...........................................................................................................16

*Capital Funding, VI, LP v. Chase Manhattan Bank USA, N.A.*, No. 01-CV-6093, 2003 WL 21672202 (E.D. Pa. Mar. 21, 2003) ....................................................................................21

*Caudill Seed & Whse. Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826 (2000), *reconsideration granted on other grounds*, 126 F. Supp. 2d 937 (E.D. Pa. 2001) .............................................21

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir.), *cert. denied*, 464 U.S. 938 (1983) .....................................................................................................................23

*Corestates Bank, N.A. v. Signet Bank*, No. Civ. A. 96-3199 (WY), 1996 WL 482909 (E.D. Pa. Aug. 26, 1996) .......................................................................................................................3

*Creative Dimensions in Mgt.,Inc. v. Thomas Group, Inc.*, No. 96-6318, 1999 WL 225887 (E.D. Pa. Apr. 16, 1999) ...............................................................................................................22

*Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943 (3d Cir. 1988) ........................23

*Crivelli v. General Motors Corp.*, 215 F.3d 386 (3d Cir. 2000) ..................................................4

*Duane Morris, LLP v. Todi*, 2002 WL 31053839 (Pa. Com. Pl. Sep. 3, 2002)...........................21

*Giordano v. Witzer*, 558 F. Supp. 1261 (E.D.Pa. 1983) .............................................................23

*Glaberman Assocs., Inc. v. J. Kinderman & Sons*, No. Civ. A. 98-3711, 1999 WL 98588 (E.D. Pa.1999) .............................................................................................................................18

*Gregg v. Independence Blue Cross*, 2001 WL 1807400 (Pa. Com. Pl. Jun. 14, 2001) ...............21

*Gresh v. Potter McCune Co.*, 235 Pa.Super. 537, 344 A.2d 540 (Pa. Super. 1975) .................16

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608 (2d Cir.2001)....................................10

*Idasetima v. Wabash Metal Products, Inc.*, No. Civ. A. 01-197 (WY), 2001 WL 1526270 (E.D. Pa. Nov. 29, 2001) ................................................................................................................22

*In re Rockefeller Center Properties, Inc. Sec. Litig.*, 184 F.3d 280 (3d Cir.1999) ......................6

*John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070 (3d Cir. 1997) .............3, 23, 24

*Jordan v. SEI Corp*, No. Civ. A. 96-1616 (WY), 1996 WL 296540 (E.D. Pa. Jun. 4, 1996) .6, 23

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) ........................................................22

*National Data Payment Systems, Inc. v. Meridian Bank*, 212 F.3d 849 (3d Cir. 2000).............18

*Pennpac Int'l, Inc. v. Rotonics Mfg., Inc.*, No. Civ. A. 99-2890 (WY), 2001 WL 569264 (E.D. Pa. May 25, 2001)..........................................................................................................4, 17, 18

*Peoples Mortgage Co., Inc. v. Federal Nat'l Mortgage Ass'n*, 856 F. Supp. 910 (E.D. Pa. 1994) ....................................................................................................................................4, 5

*Phoenix Four Grantor Trust #1 v. 642 North Broad St. Assoc.*, No. Civ. A. 00-597 (WY), 2000 WL 876728  (E.D. Pa. 2000) ................................................................................................21

*Rototherm Corp. v. Penn Linen & Uniform Serv., Inc.*, No. Civ. A. 96-6544, 1997 WL 419627 (E.D. Pa. Jul. 3, 1997).........................................................................................................19

*Schulman v. J.P. Morgan Inv. Mgt., Inc.*,  35 F.3d 799 (3d Cir. 1994) ........................................4

*TH Services Group, Inc. v. Independence Blue Cross*, No. 98-CV-4835, 2001 WL 115041 (E.D. Pa. Feb. 1, 2001), *aff'd*, 276 F.3d 580 (3d Cir. 2001)............................................................4

*VERSAR, Inc. v. Ball*, No. Civ. A. 01-1302, 2001 WL 818354 (E.D. Pa. July 12, 2001)...........23

*W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 566 N.E.2d 639, 565 N.Y.S.2d 440 (1990).................................................................................................................................11

*Wayland Inv. Fund, LLC. v. Millenium Seacarriers, Inc.*, 111 F.Supp.2d 450 (S.D.N.Y. 2000)11

*Windsor Securities, Inc. v. Hartford Life Ins. Co.*,  986 F.2d 655 (3d Cir. 1993) ........................5

## PRELIMINARY STATEMENT

This action arises from contracts executed by the plaintiff in this action, freelance author Russell Wild, and defendant Jungle Interactive Media, Inc. ("Jungle"), the publisher of the magazine *MBA Jungle*, pursuant to which plaintiff wrote articles for the "What B-School Didn't Teach Me" feature in *MBA Jungle*.  Under Paragraph 5.1 of plaintiff's contracts, following an "Exclusivity Period" (during which plaintiff is completely barred from republishing his articles), plaintiff has the right to authorize reuse of his articles **only** with "the prior written permission" of *MBA Jungle*.  By comparison, under Paragraph 4.1(c), (d) and (e) of those contracts, Jungle has the right to itself republish or to authorize others to republish the articles, without plaintiff's permission but subject to various contractual formulae for further compensation to plaintiff.

Notwithstanding the restrictions on his republication rights in Paragraph 5.1 of his contracts, plaintiff -- without obtaining *MBA Jungle*'s permission or even informing *MBA Jungle* -- engaged in negotiations with McGraw-Hill to publish a book, tentatively titled *"The Instant MBA,"* approximately one-third of which was to consist of articles written by plaintiff for *MBA Jungle*'s "What B-School Didn't Teach Me" feature pursuant to those contracts.  When it learned about these negotiations from a McGraw Hill press release, Jungle reminded plaintiff and his attorneys of those restrictions -- to no avail.  Jungle's attorneys thereupon gave McGraw-Hill notice of its contractual right to control republication of the articles written by plaintiff for *MBA Jungle*, made clear that it had not granted plaintiff the required "prior written permission," further pointed out that, under those same agreements with plaintiff, Jungle had the right to republish those materials itself, and advised McGraw-Hill of the possibility of legal claims against McGraw-Hill if it proceeded to publish plaintiff's articles without Jungle prior written permission after having received such notice of plaintiff's contractual restrictions.

Unable to negotiate a book contract with McGraw-Hill under these circumstances, plaintiff filed this action in the Court of Common Pleas for Lehigh County on June 24, 2002, against Jungle and its Co-Founder Jon Housman, claiming tortious interference with prospective contractual relations.   On July 22, 2002, defendants removed this action to the United States District Court for the Eastern District of Pennsylvania, and on August 12, 2002, defendants moved to dismiss the Complaint or, in the alternative, to transfer the action to the Southern District of New York pursuant to 28 U.S.C. §1404(a).   On December 19, 2002, this Court granted defendants' motion and dismissed the Complaint without prejudice to plaintiff's right to file an amended complaint.  Plaintiff served his Amended Complaint on February 18, 2003, and, following a suspension of the proceedings, on July 25, 2003, this Court ordered that defendants respond thereto by August 14, 2003.

Plaintiff's conclusory allegations of an absence of privilege or justification and that defendant acted "maliciously," without supporting facts, are insufficient to withstand a motion to dismiss where the Amended Complaint itself and the documents incorporated therein themselves clearly demonstrate defendants' reasonable assertion in good faith of Jungle's legally protectable interest and that they employed no "wrongful means" in their communications with McGraw-Hill. Accordingly, the elements of tortious interference with prospective contractual relations are lacking as a matter of law, and Counts I and II should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's has now asserted two additional claims: in Count III, plaintiff seeks a declaratory judgment that one year after the articles were written by plaintiff, Jungle ceased to have any "proprietary interest" in them; and in Count IV, plaintiff asserts a claim for "conversion" of those articles.  These claims are manifestly without merit since it is clear from the face of the Amended Complaint and the documents plaintiff has attached to it and incorporated therein that Jungle

2

continues to have a proprietary interest in such articles. In addition, Count IV is clearly a "breach of contract claim in disguise," and no cause of action lies for conversion of such intangible property. Accordingly, Counts III and IV should also be denied or dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

However, in the event that this Court does not dismiss this action, because the contracts between plaintiff and Jungle contain a forum selection clause that expressly provides for exclusive jurisdiction in New York courts of all disagreements or disputes arising under those agreements, and each of plaintiff's four Counts manifestly arise under these contracts, this Court should transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## ARGUMENT

I.    **COUNTS I AND II IN THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM: DEFENDANTS CANNOT BE LIABLE FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS BECAUSE, ON THE FACE OF THE COMPLAINT ITSELF, DEFENDANTS WERE MOTIVATED BY A REASONABLE GOOD-FAITH BELIEF IN A LEGALLY PROTECTED INTEREST AND EMPLOYED NO WRONGFUL MEANS.**

Under Pennsylvania law,[1] a plaintiff asserting intentional interference with prospective contractual relations must prove the following elements: (1) a prospective contractual relationship;

---

[1]    For the reasons set forth in their Reply Memorandum of Law dated September 3, 2002 at pp. 3-6 in support of their original motion to dismiss, defendants continue to maintain that, because Mr. Wild and Jungle Interactive Media expressly stipulated in Paragraph 7.4 of their agreements that their agreements "shall be governed by and construed under the laws of New York," Amended Complaint, Ex. A, New York law applies to plaintiff's tortious interference claims. As this Court explained with respect to the same language at issue in *Corestates Bank, N.A. v. Signet Bank*, No. Civ. A. 96-3199 (WY), 1996 WL 482909, *5 n.3 (E.D. Pa. Aug. 26, 1996), "The word 'and' is the pivotal term because it indicates that the words 'governed by' envision claims other than those sounding in contract law, which are adequately covered by the language 'construed in accordance with.'" *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070 (3d Cir. 1997), is clearly distinguishable in this respect because the absence of privilege or justification is a necessary element of tortious interference and not a defense thereto, and plaintiff must construe his rights under those agreements in order to establish this element of his claims. However, because this Court indicated at oral argument on December 19, 2002 that it was inclined to conclude that Pennsylvania law

3

(2) purposeful action specifically intended to prevent the prospective relation from occurring; (3) "the absence of privilege or justification on the part of the defendant"; (4) actual damage; and (5) a reasonable likelihood that the relationship would have occurred but for the defendant's interference. *Pennpac Int'l, Inc. v. Rotonics Mfg., Inc.*, No. Civ. A. 99-2890 (WY), 2001 WL 569264, *13 (E.D. Pa. May 25, 2001). *See also Peoples Mortgage Co., Inc. v. Federal Nat'l Mortgage Ass'n*, 856 F. Supp. 910, 932 (E.D. Pa. 1994); *TH Services Group, Inc. v. Independence Blue Cross*, No. 98-CV-4835, 2001 WL 115041, *12 (E.D. Pa. Feb. 1, 2001), *aff'd*, 276 F.3d 580 (3d Cir. 2001).[2]

"Pennsylvania has expressly adopted the Restatement (Second) of Torts, which states that a necessary element of this tort is improper conduct by the alleged tortfeasor…" *Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000). *See Restatement (Second) of Torts* §766B, Comment a. On the basis of Section 773 of the Restatement, interference with such relations is "privileged" and not "improper" "when the actor believes in good faith that his legally protected interest may otherwise be impaired by the performance of the [prospective] contract." *Schulman v. J.P. Morgan Inv. Mgt., Inc.*, 35 F.3d 799, 810 (3d Cir. 1994). *See Buschel v. Metrocorp.*, 957 F.

---

governed these claims, defendants herein argue on the basis of Pennsylvania law. Defendants respectfully refer the Court to their August 12, 2003 Memorandum of Law at pp. 3-17, for the reasons dismissal of these claims would likewise be required under New York law.

[2]     Count I in the Amended Complaint, against defendant Jungle, is entitled "Tortious Interference with Prospective Contractual Relations." Count II in the Amended Complaint, against defendant Jon Housman, is entitled "Tortious Interference with Contractual Relations." At no point in the Amended Complaint does it allege that plaintiff entered into a contract with McGraw-Hill concerning his articles for *MBA Jungle*. Indeed, the allegations in Count II itself continue to refer to defendants' alleged "wrongful interference" with plaintiff's "prospective contractual relationship with McGraw-Hill," "conduct intended to induce McGraw-Hill to forego [sic] a contractual relationship with Plaintiff," a "scheme to terminate the contractual negotiations between Plaintiff and McGraw-Hill," and "efforts to terminate Plaintiff's prospective contractual relationship with McGraw-Hill." Amended Complaint, ¶¶ 60, 62, 67, 69. Notwithstanding the difference between the two titles of Count I and Count II, both must therefore be understood as claims of "tortious interference with prospective contractual relations."

4

Supp. 595, 599 (E.D. Pa. 1996). [3]  Thus, as provided in Section 773, no claim for tortious interference lies if the defendant holds a good faith and reasonable belief in the existence of a legally protected interest.  *Peoples Mortgage Co. v. Federal Nat'l Mortgage Ass'n*, 856 F. Supp. at 939, 942.  *See also Bahleda v. Hankinson Corp.*, 228 Pa. Super. 153, 156-57, 323 A.D.2d 121, 122-23 (Pa. Super. 1974).  The Third Circuit has made clear in this context, "[o]ur cases accord substantial deference to defendants whose conduct, despite its conflict with plaintiff's interest, protects an existing legitimate business concern." *Windsor Securities, Inc. v. Hartford Life Ins. Co.*,  986 F.2d 655, 665 (3d Cir. 1993).

Specifically with respect to an alleged tortious interference by means of a threat of civil litigation against a third party, as plaintiff alleges with respect to Jungle's communications with McGraw-Hill, such threat is wrongful "if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication."  Restatement (Second) of Torts, Comment c on §767(a).  With respect to an alleged tortious interference by means of a threat of civil litigation, a defendant whose actions are privileged by virtue of Section 773, *i.e.,* who acted on the basis of a good faith and reasonable belief in the existence of a legally protected interest, meets the requirements of Section 767(a) and

---

[3]     Restatement (Second) of Torts § 773 provides:

> One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

5

Comment c thereto. *Peoples Mortgage Co. v. Federal Nat'l Mortgage Ass'n*, 856 F. Supp. at 939, 942-43.

> **A.** **On the Face of the Amended Complaint, Defendants' Actions Were Motivated By a Reasonable Good-Faith View of Jungle Interactive Media's Legally Protected Interests Under Its Agreements With Plaintiff and Were Therefore "Privileged."**

On the face of the Amended Complaint and the documents attached to it and incorporated therein, it is patently clear that, in their communications to McGraw-Hill, defendants were motivated by a reasonable good-faith view of Jungle's economic rights under its agreements with Mr. Wild pertaining to the "B-School" articles he wrote for *MBA Jungle*.[4]

Paragraph 5.1 of each of the pertinent agreements between Mr. Wild and Jungle contains "Restrictions" on Mr. Wild's rights in the article in addition to those set forth in Paragraph 4 ("Grant of Rights"), and provides as follows: "In addition to restrictions during the Exclusivity Period,

---

[4]       As the Amended Complaint points out (at ¶11), the single agreement between Mr. Wild and Jungle attached thereto as Exhibit A is "illustrative" of eight other agreements between Mr. Wild and Jungle pertaining to the "What B-School Didn't Teach Me" articles that Mr. Wild wrote for *MBA Jungle* at issue in this litigation. According to the Amended Complaint (at ¶11), these are dated (or, to be more precise, in most cases, the "due dates" under those agreements are) June 12, 2000, July 14, 2000, September 1, 2000, October 6, 2000, November 29, 2000, December 29, 2000, January 29, 2001, and June 1, 2001. True and correct copies of all of these agreements and one other agreement pertaining to the "What B-School Didn't Teach Me" articles Mr. Wild wrote for *MBA Jungle* are attached as Exhibit 2 to defendants' motion. These agreements all contain language regarding the terms that are at issue in this motion, *i.e.*, the "Grant of Rights" in Paragraph 4.1, the "Restrictions" in Paragraph 5.1, and the "Governing Law" and forum selection clause in Paragraph 7.4, that is identical to the terms in the agreement, the due date for which is February 10, 2001, attached to the Amended Complaint. For ease of reference, reference in this memorandum shall ordinarily be to that agreement. With respect to the copies of the agreements attached to the Housman Declaration, on a motion to dismiss, a district court may, without having to convert the motion to one for summary judgment, consider documents "integral to or explicitly relied upon in the complaint," "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," and information that is a "matter of public record." *In re Rockefeller Center Properties, Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir.1999);.*Jordan v. SEI Corp*, No. Civ. A. 96-1616 (WY), 1996 WL 296540, *1 (E.D. Pa. Jun. 4, 1996).

Writer shall not authorize the use of the Article, at any time, in any publication, web site or other means of distribution by any business-oriented web site or print publication, without the prior written permission of the Editor in Chief."  Amended Complaint, Ex. A.

Paragraph 4.1(a) of each of the agreements grants Jungle the exclusive right to first publish the article during the "Exclusivity Period," which is defined as the period from the date of the agreement until 90 days beyond the first publication of the article.  Paragraph 4.1(a) further provides that "Writer will not allow anyone else to publish or use the Article or any portions thereof or in any medium until after the expiration of the Exclusivity Period."  Amended Complaint, Ex. A.

Paragraph 4.1(c), (d) and (e) grant to Jungle the right to itself republish or to authorize others to republish the article, without requiring Mr. Wild's permission, in publications, collections, compendia or compilations, subject to various contractual formula for further compensation to Mr. Wild.  Amended Complaint, Ex. A.

The overall outline of the parties' respective republication rights is therefore patently clear.  By virtue of Paragraph 4.1(a), within the Exclusivity Period, Mr. Wild has no right to authorize anyone else to use his articles.  By virtue of Paragraph 5.1, following the Exclusivity Period, Mr. Wild has the right to authorize reuse of his articles, but only with "the prior written permission of the Editor in Chief [of *MBA Jungle*]."  By virtue of Paragraph 4.1(c), (d) and (e), both during and after the Exclusivity Period, Jungle has the right to itself republish or to authorize others to republish the articles, without Mr. Wild's permission but subject to various contractual formula for further compensation to Mr. Wild.

That the "restriction" set forth in Paragraph 5.1 is fully applicable to the book Mr. Wild was negotiating with McGraw-Hill is obvious.  According to the Amended Complaint, approximately one-third of the proposed book, "tentatively titled *The Instant MBA*," was to consist of articles Mr.

Wild wrote for the "What B-School Didn't Teach Me" feature in *MBA Jungle* that had been "previously published in MBA Jungle." Amended Complaint, ¶14. The straightforward meaning of Paragraph 5.1 is that "prior written permission" from *MBA Jungle* is required before Mr. Wild can reuse his articles "in any" (1) "publication"; (2) "website"; or (3) "other means of distribution by any business-oriented web site or print publication." There is no question that *The Instant MBA* fits the description "any publication" and that *MBA Jungle*'s prior written permission was therefore required.

In his attempt to escape from Jungle's rights in these articles, plaintiff has put forward four tortuous (and mutually incompatible) alternate versions of the meaning of Paragraphs 4.1 and 5.1. First, plaintiff maintains that Paragraph 5.1 should be construed to require "prior written permission" only for reuse "in any publication … by any business-oriented web site or print publication." Amended Complaint, ¶45. Plaintiff thus would require that the sentence contain the obtuse construction "in any publication … by any … publication." This rendering of the sentence into gibberish becomes possible only by conveniently omitting from the sentence its phrase "or other means of distribution," to which the phrase that immediately follows, "by any business-oriented web site or print publication," obviously pertains.

But even with plaintiff's obtuse construction, the sentence still would require *MBA Jungle*'s "prior written permission" for Mr. Wild's contemplated publication since it is obvious that a book titled *The Instant MBA* and comprised of articles that appeared in a feature entitled "What B-School Didn't Teach Me" must be a "business-oriented print publication."

Plaintiff is not finished rewriting the sentence, however. Apparently insisting that the phrase "business-oriented print **publication**" be read as "business-oriented print **publisher**," plaintiff contends that "the agreement cannot be construed to prohibit republication of Plaintiff's previously

published MBA Jungle content in a book by a non-business oriented website or print publication general publisher like McGraw-Hill." Amended Complaint, ¶45; *see also id.* ¶21, Ex. D. But even if we were to accept plaintiff's complete rewriting of the provision *arguendo*, *MBA Jungle*'s prior written permission would still be required because McGraw-Hill is obviously a business-oriented publisher. At the risk of belaboring the obvious, McGraw-Hill is probably the world's largest publisher of business-related texts, and it has in print hundreds upon hundreds of books in such fields as Business Communications, Business Law, Business and Society, Business Ethics, Business Policy and Strategic Management, Compensation, E-Business, Employee Benefits, Enterpreneurship, Human Resource Management/Personnel, Industrial Psychology, International Business, International Human Resource Management, International Management, Introduction to Business, Labor Relations and Collective Bargaining, Leadership, Management Skills, Negotiation, Organizational Behavior, Development and Theory, Principles of Management, Staffing, Total Quality Management and Training and Development. *See* Ex. 3 to this Motion (containing a sampling of pages as of a year ago from McGraw-Hill's website listing some of McGraw-Hill's publications under these and other business-related categories).

Plaintiff's second argument for escaping from the restrictions in Paragraph 5.1 is the contention of his attorney in correspondence with *MBA Jungle* that Paragraphs 4.1 and 5.1 are "inconsistent." Amended Complaint, Ex. B. However, as the foregoing discussion makes clear, there is no such inconsistency. Under Paragraph 4.1(a), within the Exclusivity Period, Mr. Wild has no right to authorize anyone else to use his articles. Under Paragraph 5.1, following the Exclusivity Period, Mr. Wild has the right to authorize reuse of his articles, but only with "the prior written permission of the Editor in Chief." Under Paragraph 4.1(c), (d) and (e), both during and after the Exclusivity Period, Jungle has the right to itself republish or to authorize others to republish the

9

articles, without Mr. Wild's permission but subject to various contractual formula for further compensation to Mr. Wild. That Jungle is afforded the right under Paragraph 4.1(c), (d) and (e) to itself republish the articles **without Mr. Wild's consent** after the Exclusivity Period in publications, collections, compendia or compilations (*i.e.*, a publication such as that Mr. Wild attempted to negotiate with McGraw-Hill) and that such provisions provide for Mr. Wild's further compensation in the event of such republication simply underscore the corollary restriction on Mr. Wild's republishing the articles without Jungle's written consent.

There is therefore no ambiguity as to the meaning of Paragraph 5.1 that would permit introduction of extrinsic evidence as to its meaning, because any reasonable interpretation of that provision (and even the foregoing strained variants put forward by plaintiff) favor Jungle's position and support Jungle's right to approve plaintiff's agreement with McGraw-Hill. *See Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,* 252 F.3d 608, 616 (2d Cir.2001) ("ambiguity does not exist simply because the parties urge different interpretations"). The positions taken by defendants in their dealings with both Mr. Wild and McGraw-Hill as to Jungle's right to consent to reuse of the articles by Mr. Wild and as to Jungle's own rights and economic interests in such materials under its agreements with Mr. Wild were not only reasonable and nonfrivolous but manifestly justified.[5]

Plaintiff's third argument for escaping from the restrictions in Paragraph 5.1 is his

---

[5]    Plaintiff alleges in the Amended Complaint that the "specific wording" of Paragraph 5.1 "was negotiated by the parties...." Amended Complaint, ¶12, *see also id.* ¶¶13, 18. Accordingly, based on the Amended Complaint itself, the agreement should be viewed as the product of an arm's-length negotiation between the parties and should not "be construed against Defendant Jungle Interactive Media" (as the Amended Complaint argues in ¶ 44). Moreover, on at least nine separate occasions, Mr. Wild agreed to such provisions. Amended Complaint, ¶11. Indeed, it is noteworthy that the first of these agreements between Mr. Wild and Jungle, the due date for which is September 12, 2000, contains numerous revisions in Mr. Wild's handwriting and initialed by Mr. Wild. Housman Decl. ¶ 2, Ex. 2.

contention, which flies in the face of the language of the agreements (as well as even his own construction of Paragraph 5.1), that "the intent of the parties to said contract was that Plaintiff could republish content authored by him and published in MBA Jungle in a book of his own and that Plaintiff was only restricted from republishing said content to a competitive business magazine or website."  Amended Complaint, ¶48; *see also id.* ¶¶12, 18.  Plaintiff's current account of the supposed intent of the parties flatly contradicts the expressed terms of the agreements concerning restrictions on Mr. Wild's right to reuse such articles without Jungle's prior written permission.  Each of the agreements between Mr. Wild and Jungle contains an explicit and unqualified "Entire Agreement" clause that provides as follows:

> **7.5.**  **Entire Agreement**.  **This Agreement constitutes the entire agreement between the parties relating to the subject matter of this Agreement and supersedes all proposals, negotiations, conversations, understandings, or discussions, whether written or oral, between parties relating to the subject matter of this Agreement and all past dealing or industry custom, except for written agreement signed by the Editor in Chief or an executive officer of Jungle making reference to this Agreement and the clause to be changed.

Amended Complaint, Ex. A.  Plaintiff's appeal to a supposed intent that alters the written terms of an expressly integrated agreement is patently untenable as a matter of law.  *W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 162-63, 566 N.E.2d 639, 642, 565 N.Y.S.2d 440, 443 (1990); *Wayland Inv. Fund, LLC. v. Millenium Seacarriers, Inc.*, 111 F.Supp.2d 450, 453-54 (S.D.N.Y. 2000).

In support of his new Counts III and IV for declaratory relief and conversion, but not, it would appear, in the context of his tortious interference claims, plaintiff has now put forward yet another argument for escaping from the restrictions in Paragraph 5.1.  Plaintiff's fourth argument is based on the final sentence in Paragraph 4.1(a):  "If the article has not been published within one year of the signing of this contract, this contract shall be renegotiated."  Plaintiff contends that,

based of this sentence, Jungle no longer has a "proprietary interest" in any of the articles at issue in this litigation because they were all "written over one (1) year ago." Amended Complaint, ¶75.

Paragraph 4.1(a) provides nothing of the sort. The one-year limitation applies only to an article that was not published in *MBA Jungle* within one year of the corresponding agreement. Plaintiff does not dispute that the "What B-School Didn't Teach Me" articles written by him and published in *MBA Jungle* pursuant to the agreements referenced in the Amended Complaint were published in *MBA Jungle* within one year of the signing of the corresponding agreements. See also Housman Decl. ¶3. Accordingly, Paragraph 4.1(a) has no conceivable bearing on Jungle's continued right to republish such articles.

Thus, on the basis of the Amended Complaint and the documents attached thereto and incorporated therein, it is clear that the positions taken by defendants in their communications with both Mr. Wild and McGraw-Hill were based on a reasonable and, indeed, straightforward understanding of the contractual provisions that concern Jungle's republication rights under its agreements with Mr. Wild and on the company's legally protected interests in controlling such republications and in proceeds therefrom. Given the agreements themselves, which plaintiff has incorporated in the Amended Complaint, plaintiff cannot prove his conclusory allegation that defendants "falsely misrepresented that Defendant, Jungle, had a proprietary claim to Plaintiff's articles." Amended Complaint, ¶41. Nor is it possible for plaintiff to prove that defendants' communications with respect to their expressed position had nothing to do with their rights under these agreements and were instead motivated by a desire to harass either Mr. Wild or McGraw-Hill. Apart from their conclusory and question-begging assertion that defendants "knew" that their position was false, plaintiff's allegations are devoid of any facts that would sustain an allegation that defendants were motivated solely by a desire to harass either Mr. Wild or McGraw-Hill.

12

Instead, the specific allegations concerning defendants' conduct confirm that defendants acted on the basis of their understanding of Jungle's rights concerning the republication of Mr. Wild's articles.  In his March 15, 2002 letter to McGraw-Hill's editor, Jungle's attorney notified McGraw-Hill of Jungle's right under its agreements with Mr. Wild to control republication of the articles written by Mr. Wild for *MBA Jungle*, made clear that Jungle had not granted Mr. Wild the required "prior written permission" to reuse his articles in McGraw-Hill's contemplated publication, and further pointed our that, under those same agreements, Jungle may publish those materials itself, subject to its obligation to pay Mr. Wild the contractually-prescribed additional fee.  Amended Complaint, Ex. C.  Jungle's attorney further properly advised McGraw-Hill of adverse legal consequences if, following such notice of the agreements between Mr. Wild and Jungle Interactive, it persisted in plans to publish the *MBA Jungle* articles.  *Id.*

Although defendant Housman disputes plaintiff's account of his communications with McGraw-Hill's editor, *see* Amended Complaint, Ex. G, even if plaintiff's description of those communications is accepted for purposes of this motion, it remains obvious that defendants were motivated by the foregoing view of Jungle's republication rights under its agreements and by the company's consequent economic interest in any such republication of *MBA Jungle* articles.  Indeed, plaintiff in his Amended Complaint and in the documents incorporated in the Amended Complaint repeatedly admits that defendants were motivated by such economic interests:

- At ¶23, the Amended Complaint alleges that, on March 19, 2002, Mr. Housman telephoned McGraw-Hill editor Danielle Egan-Miller "**to propose a business relationship between McGraw-Hill and Jungle Interactive Media whereby Jungle Interactive Media would author a book on business tips substantially similar to the one which was already the subject of contract negotiations between Plaintiff and McGraw-Hill**."  (emphasis added).

- At ¶27, the Amended Complaint alleges that "[b]y March 25, 2002, McGraw-Hill expressed concern to Plaintiff that MBA Jungle **was claiming proprietary rights in**

13

**Plaintiff's business school column concept**…."  (emphasis added); *see also id*. ¶¶30, 51, 64.

- Also at ¶27, the Amended Complaint then refers to an email dated March 25, 2002 from Ms. Egan-Miller to Mr. Wild in which she states that she told "MGH legal counsel … about how Jon Housman called me **and pitched me a book publishing relationship – I shared that I suspect Jungle's motivations are financial ones."** Amended Complaint, Ex. H (emphasis added).[6]

- At ¶30, the Amended Complaint further alleges that Mr. Housman, "**acting on behalf of and in his capacity as Co-Founder of Defendant, Jungle Interactive Media advised Plaintiff that he wanted Jungle Interactive Media to publish Plaintiff's book** and that Plaintiff should sever his relationship with McGraw-Hill." (emphasis added).

- Also at ¶30, the Amended Complaint then refers to an email on May 6, 2002 from Mr. Housman to Mr. Wild in which he states "it may be a much better option to go elsewhere. **The money we are talking about here is very low. I think it best to sit down with a new publisher, and get this book done at a higher price, which I am confident we can do.**" Amended Complaint, Ex. I (emphasis added).

There are no specific allegations in the Amended Complaint that reflect any intent to harass McGraw-Hill or plaintiff or ill will to either, much less that defendants' **sole** motive was to harass Mr. Wild or McGraw-Hill.  But even if there had there been any such allegation, it would contradict plaintiff's other allegations and documents that unwittingly demonstrate the reasonable basis for

---

[6]    Plaintiff contends that Mr. Housman in a telephone conversation with the editor "asserted a purported proprietary interest in the concept behind the book Plaintiff was to author for McGraw-Hill," Amended Complaint ¶¶51, 64, and that "[t]he effect of said communication was to place McGraw-Hill on notice that publication by it of any book by Plaintiff consisting of financial advice would result in the filing of a lawsuit by Defendant, Jungle Interactive Media."  Amended Complaint ¶¶52, 65.  The sole basis for plaintiff's allegation concerning Mr. Housman's communication with Ms. Egan-Miller, however, is her own account of her conversation with Mr. Housman in an email dated March 25, 2002 from Ms. Egan-Miller to Mr. Wild, which plaintiff has attached to and incorporated in his Amended Complaint as Ex. H.  In that e-mail, Ms. Egan-Miller's account of her conversation contains nothing whatsoever to suggest that Mr. Housman ever made the absurd claim that Mr. Wild was barred from writing "any book consisting of financial advice." The documents attached to and incorporated in the Amended Complaint make clear that the dispute between the parties is concerned with their respective rights to republish the specific articles that Mr. Wild wrote for the "What B-School Never Taught Me" features in *MBA Jungle*.

defendants' legally protected interest.  Plaintiff's bare assertions of defendant's "malicious" intent, see Amended Complaint, ¶¶ 57, 72, are apparently based on nothing more than a negative inference drawn from his allegations that defendants "falsely misrepresent[ed] to McGraw-Hill that Defendant, Jungle, had a proprietary claim to Plaintiff's articles," and that defendants "knew that their threats [of litigation] where [sic] invalid."   See Amended Complaint, ¶¶ 40-41, 59, 66. However, as the Amended Complaint itself and the documents plaintiff has himself attached to and incorporated therein reveal, defendants had a reasonable, good faith basis for believing that Jungle's permission was required before Mr. Wild could contract with McGraw-Hill concerning those articles, that Jungle enjoyed the right to republish the articles itself under the agreements, and that McGraw-Hill might therefore be interfering with the contracts between Mr. Wild and Jungle if, following notice of Jungle's position, it proceeded to contract with Mr. Wild to republish those articles.

Conclusory allegations of an absence of privilege or justification or that a defendant acted "maliciously," without supporting facts, are insufficient to withstand a motion to dismiss where the complaint and the documents incorporated therein demonstrate defendants' reasonable good faith assertion of legally protectable interest and the absence of improper means.  The dismissal of the tortious interference claim in *Buschel v. Metrocorp.*, 957 F. Supp. 595 (E.D. Pa. 1996), is directly on point in this respect.  In *Buschel*, a journalist sued *Philadelphia Magazine*'s attorney for tortious interference for writing the editors of *Esquire* advising them that the journalist was breaching an alleged oral agreement with *Philadelphia Magazine* concerning a particular article and making clear that it would pursue its legal rights against both the journalist and *Esquire* if *Esquire* persisted in plans to publish such article.  This Court dismissed the claim, ruling that, even if plaintiff had satisfactorily pled an absence of privilege, "the complaint itself showed that [defendant] was acting

15

to protect what he believed to be the legally protected interest of his client." *Id.*, at 599. Similarly, in *Bahleda v. Hankinson Corp.*, the court ruled that notwithstanding plaintiff's "averment that [defendant] acted maliciously…, the complaint must fail," because "**By incorporating the contract in its complaint, appellant has shown, contrary to his burden, the presence of a privilege on the part of [defendant], thus defeating his own cause of action**." *Bahleda v. Hankinson Corp.*, 228 Pa. Super. at 156, 323 A.D.2d at 123 (emphasis added). *See also C&C Security Specialists, Inc. v. GTI-Superior, Inc.*, No. Civ. A. 86-1096, 1986 WL 7573, *3 (E.D. Pa. Jul. 1, 1986) (bare "allegations that defendant acted 'intentionally, wrongfully, maliciously, fraudulently, deceitfully and without justification, interfered with and precluded and prevented plaintiffs from entering into the relationship . . .'" were "an insufficient allegation of an intent to cause harm") (*quoting Glenn v. Point Park College*, 441 Pa. 474, 481-82, 272 A.2d 895, 899 (1971)); *Gresh v. Potter McCune Co.*, 235 Pa. Super. 537, 541-543, 344 A.2d 540, 542-543 (Pa. Super. 1975).

> **B.    On the Face of the Amended Complaint, Defendants' Tortious Interference Claims Must Be Dismissed on the Basis of the "Competitor's Privilege."**

Finally, and in any event, dismissal of plaintiff's tortious interference claims is required by the competitor's privilege in Section 768 of the Restatement,[7] as recognized by Pennsylvania courts.

---

[7]    Section 768 provides:

§ 768. Competition as Proper or Improper Interference.

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

      (a) the relation concerns a matter involved in the competition between the actor and the other and

      (b) the actor does not employ wrongful means and

      (c) his action does not create or continue an unlawful restraint of trade and

*Pennpac Int'l, Inc. v. Rotonics Mfg., Inc.*, 2001 WL 569264, *13, n. 12.   Pursuant to this competitor's privilege, Mr. Wild's claims must be dismissed because Jungle is Mr. Wild's "competitor" with respect to control of the right to publish the "B-School" articles, the prospective relationship between Mr. Wild and McGraw-Hill "concern[ed] a matter involved in [that] competition," defendants did not employ "wrongful means," and defendants' purpose was "at least in part to advance" Jungle's competing interest.   Mixed motives do not suffice for purposes of Section 768:  only if the actor's conduct "is directed **solely** to the satisfaction of his spite or ill will and not at all to the advancement of his competitive interests over the person harmed, [is] his interference … held to be improper."  Restatement (Second) of Torts, Comment g on §768(d) (emphasis added).

It is clear from the face of the Amended Complaint and the documents attached thereto, including the agreements between Mr. Wild and Jungle, the letter from Jungle's attorney to McGraw-Hill, and the allegations and attached documents pertaining to defendants' other communications with McGraw-Hill, as described above at pp. 6-14, that defendants' communications were intended to protect Jungle's right under Paragraph 5.1 to control Mr. Wild's republication of the "B-School" articles printed in *MBA Jungle* as well as Jungle's rights under Paragraph 4.1(c) and (e) to itself authorize third parties to republish such articles, without Mr. Wild's permission.   The competing interests of plaintiff and Jungle in controlling such republications and deriving different economic benefits therefrom could not be clearer.

---

(d) his purpose is at least in part to advance his interest in competing with the other.

(2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

17

The Amended Complaint does not allege or otherwise include any possible basis on which to allege that defendants employed "wrongful means" in their communications with McGraw-Hill. As this Court has recently pointed out with respect to the competitor's privilege, "wrongful means" are employed only "when the competitor commits conduct that is independently actionable." *Pennpac Int'l, Inc. v. Rotonics Mfg., Inc.*, 2001 WL 569264, *13. *See National Data Payment Systems, Inc. v. Meridian Bank*, 212 F.3d 849, 857-858 (3d Cir. 2000). Plaintiff has neither alleged any tenable separate cause of action against defendants involving their communications with McGraw-Hill, nor set forth any factual allegations that would be the basis for other tort claims. For the reasons set forth below in Part III of this Memorandum of Law, plaintiff's so-called "conversion" claim is clearly without merit with respect to the "B-School" articles that had been printed in *MBA Jungle* at the time of defendants' communications with McGraw-Hill, and is otherwise untenable because it is a "breach of contract claim in disguise" and because no action for conversion of such intangible property lies under Pennsylvania law. See below, pp. 20-22.

Thus, in *Glaberman Assocs., Inc. v. J. Kinderman & Sons*, No. Civ. A. 98-3711, 1999 WL 98588 (E.D. Pa.1999), this Court granted defendant's motion to dismiss a tortious interference claim under Section 768 because it was "clear on the face of the complaint" that "defendant was acting as a competitor with plaintiff and seeking to advance its own competitive interests" and that defendant's conduct "[did] not constitute the sort of criminal, fraudulent, or independently-actionable conduct required to support a claim for tortious interference against a business competitor." *Id*., 1999 WL 98588, *5. The same result should obtain here.

Accordingly, under Section 768 of the Restatement as well as under Sections 767 and 773, plaintiff's tortious interference claims must be dismissed as a matter of Pennsylvania law.

### C.    Plaintiff's Tortious Interference Claim Against Defendant Housman Must, In Any Event, Be Dismissed Because, On the Face of the Amended Complaint, He Was Not Solely Motivated By Malice Toward Plaintiff.

"The overwhelming weight of authority, even in the corporate context, is that a corporate officer, director, trustee or other management level agent is *not* personally liable for inducing breach of contract unless the individual's *sole* motive in causing the corporation to breach a contract is actual malice directed toward the plaintiff, or the individual's conduct is against the interest of the corporation." *Avins v. Moll*, 610 F. Supp. 308, 318 (E.D. Pa. 1984) (emphasis in original), *aff'd,* 774 F.2d 1150 (3d Cir. 1985). *See also Rototherm Corp. v. Penn Linen & Uniform Serv., Inc.*, No. Civ. A. 96-6544, 1997 WL 419627, *13 n.15 (E.D. Pa. Jul. 3, 1997); *Alexander v. Pennsylvania Dep't of Banking*, No. Civ. A. 93-5510 (WY), 1994 WL 144305, *5 (E.D. Pa. Apr. 21, 1994).

As already shown, on the face of the Amended Complaint itself, there is no allegation and no basis for alleging that Mr. Housman's actions were either **solely** motivated by malice toward Mr. Wild or contrary to the interest of Jungle.  Instead, on the face of the Amended Complaint, Mr. Housman's actions were manifestly undertaken in his corporate capacity and based on his view of the corporation's interest in protecting its rights under its agreements with Mr. Wild to control republication of the articles written pursuant to those agreements.  Accordingly, the tortious interference claim against defendant Housman must, in any event, be dismissed.

### II.    COUNT III IS ENTIRELY WITHOUT MERIT: ON THE FACE OF THE AMENDED COMPLAINT ITSELF, DEFENDANT JUNGLE RETAINS A PROPRIETARY INTEREST IN ARTICLES THAT WERE PUBLISHED WITHIN ONE YEAR OF THE SIGNING OF THE APPLICABLE AGREEMENTS.

In Count III, plaintiff seeks a declaratory judgment that, under Paragraph 4.1(a) of the agreements, Jungle no longer has a "proprietary interest" in any of the articles at issue in this litigation because they were all "written over one (1) year ago."  Amended Complaint, ¶75.

19

However, Paragraph 4.1(a) provides nothing of the sort.  It merely provides that "If the article has not been published within one year of the signing of this contract, this contract shall be renegotiated."  The obvious corollary is that the contract shall not be renegotiated if the article in question is published within one year of the signing of the contract.  Plaintiff does not dispute that each "What B-School Didn't Teach Me" article that he wrote pursuant to the agreements referenced in the Amended Complaint that were published in *MBA Jungle* were published there within one year of the signing of the applicable agreement.  See also Housman Decl. ¶3.  Accordingly, Paragraph 4.1(a) has no bearing on Jungle's continued right to republish such articles.

Jungle's ongoing "proprietary interest" in any article that it timely published within one year of the signing of the applicable agreement is reinforced by the other provisions in Paragraph 4.1.  Thus, Paragraph 4.1(c), (d) and (e) grant to Jungle the right to itself republish or to authorize others to republish such an article, without requiring Mr. Wild's permission, in publications, collections, compendia or compilations, subject to various contractual formula for further compensation to Mr. Wild.  Amended Complaint, Ex. A.

III.    **COUNT IV FOR "CONVERSION" IS LIKEWISE ENTIRELY WITHOUT MERIT ON THE FACE OF THE AMENDED COMPLAINT:  JUNGLE CONTINUES TO HAVE THE RIGHT TO REPUBLISH THE "B-SCHOOL" ARTICLES, THE CLAIM IS OBVIOUSLY A "BREACH OF CONTRACT CLAIM IN DISGUISE," AND NO CAUSE OF ACTION LIES FOR CONVERSION OF INTANGIBLE PROPERTY.**

In Court IV, plaintiff contends that defendants are liable to him for "conversion" because Jungle has continued to claim a proprietary right in plaintiff's "B-School" articles, supposedly in violation of the same one-year provision in Paragraph 4.1(a), and because Jungle subsequently published two non-"B-School" articles written by plaintiff more than one year after the applicable agreements were signed.  To the extent plaintiff's conversion claim rests on his untenable view that under Paragraph 4.1(a) Jungle is permitted to use each of plaintiff's articles for only one year, it is

without merit as shown with respect to Count III.

Moreover, plaintiff's conversion claim is untenable for two additional reasons. First, in a transparent attempt to claim tort remedies and to escape the forum selection clause in Paragraph 7.4 of the agreements, under which "[a]ny disagreements or disputes arising under this Agreement shall be exclusively resolved in state or federal courts located in New York, New York," plaintiff has disguised a breach of contract claim as one for "conversion." However, Count IV is based directly on the respective rights of the parties' rights in the *MBA Jungle* "B-School" articles under Paragraph 4.1 of the agreements and on defendants' purported violation of that provision. As the "gist" of Count IV obviously "sounds in contract" and not in tort, Count IV is nothing more than "a breach of contract claim in disguise." *Capital Funding, VI, LP v. Chase Manhattan Bank USA, N.A.*, No. 01-CV-6093, 2003 WL 21672202, *5 (E.D. Pa. Mar. 21, 2003); *Caudill Seed & Whse. Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833 (2000), *reconsideration granted on other grounds*, 126 F. Supp. 2d 937 (E.D. Pa. 2001). "Under Pennsylvania law, if a plaintiff's rights to property are defined by a contract with a defendant, then that plaintiff may not sue that defendant in tort for conversion of that property." *Phoenix Four Grantor Trust #1 v. 642 North Broad St. Assoc.*, No. Civ. A. 00-597 (WY), 2000 WL 876728, *9 (E.D. Pa. 2000) (citing *Peoples Mortgage Co. v. Federal Nat'l Mortgage Ass'n,* 856 F.Supp.910, 929-30 (E.D.Pa.1994)). *See also Duane Morris, LLP v. Todi*, 2002 WL 31053839, *5 (Pa. Com. Pl. Sep. 3, 2002); *Gregg v. Independence Blue Cross*, 2001 WL 1807400, *6 (Pa. Com. Pl. Jun. 14, 2001).

Second, "rights in intangible property are not subject to conversion. Conversion encompasses theft of intangible property **only where the rights have been merged with a document**." *Creative Dimensions in Mgt. ,Inc. v. Thomas Group, Inc.*, No. 96-6318, 1999 WL 225887, *3 (E.D. Pa. Apr. 16, 1999) (emphasis added). Obviously, no such merger with a document exists with respect to

plaintiff's articles.  "[L]iability for conversion does not extend to alleged unlawful dominion and control over intangible property."  *Id.* (citation and quotations omitted).  For each of the foregoing reasons, Count IV must be dismissed.

IV.    **IF THIS ACTION IS NOT DISMISSED, BECAUSE PLAINTIFF EXPRESSLY AGREED IN A FORUM SELECTION CLAUSE THAT ANY SUCH ACTION MUST EXCLUSIVELY BE BROUGHT IN NEW YORK COURTS, THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §1404(a).**

Under 28 U.S.C. §1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[8]  Ordinarily, a plaintiff's choice of forum is entitled to deference.  *See, e.g., Idasetima v. Wabash Metal Products, Inc.*, No. Civ. A. 01-197 (WY), 2001 WL 1526270, *2 (E.D. Pa. Nov. 29, 2001).  However, no such deference applies, where, as here, the plaintiff, by way of a forum selection clause, has already contracted that such litigation be brought in another venue.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995).  In such circumstances, a forum selection clause is "presumptively valid" and will be enforced absent certain factors that are not present here.  *Jordan v. SEI Corp.*, No. Civ. A. 96-1616 (WY), 1996 WL 296540, *5 (E.D. Pa. Jun. 4, 1996).

Each of the pertinent agreements between Mr. Wild and Jungle, including the agreement attached as Exhibit A to the Amended Complaint, contains the following provision as Paragraph 7.4:

> 7.4    Governing Law.**This Agreement shall be governed by and construed under the laws of the State of New York, without regard to conflicts of laws provisions

---

[8]    Clearly, venue in the Southern District of New York would be proper under 28 U.S.C. §1391(a): all defendants reside in New York and, since this action arises from agreements expressly governed by New York law, involves New York defendants and challenged communications between such New York defendants and McGraw-Hill Companies, Inc., a New York corporation, a substantial part of the events giving rise to plaintiff's claims occurred in New York.

thereof. Any disagreements or disputes arising under this Agreement shall be exclusively resolved in state or federal courts located in New York, New York.

Amended Complaint, Ex. A; Housman Decl. ¶ 2, Ex. 2. As the discussion of Counts I and II makes clear, plaintiff's principal claims arise from a disagreement between the parties over their respective rights to republish Mr. Wild's articles under Paragraphs 4.1 and 5.1 of their agreements and clearly require that the parties' "disagreements or disputes arising under this Agreement" be "resolved."

That the "Governing Law" provision applies not merely to breach of contract claims but to torts and other claims arising from, implicating, or requiring the interpretation of the agreement is sustained by numerous decisions involving such forum selection clauses. The basic principle is that a forum selection clause will apply to noncontractual claims "if the claims asserted arise out of the contractual relation and implicate the contract's terms." *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988). *See also Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190 (3d Cir.), *cert. denied,* 464 U.S. 938 (1983); *VERSAR, Inc. v. Ball*, No. Civ. A. 01-1302, 2001 WL 818354 (E.D. Pa. July 12, 2001); *Giordano v. Witzer*, 558 F. Supp. 1261 (E.D.Pa. 1983).

In opposition to defendants' original motion, plaintiff sought to avoid transfer on the basis of *John Wyeth & Brother Ltd. v. Cigna Int'l Corp*., 119 F.3d 1070 (3d Cir. 1997), which is clearly distinguishable in that the question it raises is whether an agreement's forum selection clause with "arising under" language applies to an action in which the agreement is only put forward as a defense. *Id*., at 1076. By contrast, in the instant action, plaintiff is required to plead and to prove in this tortious interference action that defendants acted without privilege or justification: he is required to seek adjudication of the parties' contractual dispute as part of his case in chief.

But with the addition of plaintiff's new Count III – which expressly seeks an adjudication on the meaning of Paragraph 4.1 of the agreement – and Count IV – which is a blatant "breach of contract claim in disguise" – the applicability of the parties' forum selection clause is now indisputable. Plaintiff contracted to bring such claims in New York courts, and this Court should not countenance his transparent attempt to escape its requirements.

The other factors generally applicable to §1404(a) motions are either neutral as between this District and the Southern District of New York or, with respect to three such factors, tip the balance even further in the direction of New York. The factor of the convenience of the parties clearly favors defendants' motion. The likely witnesses for defendants, Mr. Housman and the Editors-in-Chief of *MBA Jungle* at times relevant to these claims, Bill Shapiro and Vince Bielski, work and reside in New York City and Brooklyn, New York, and venue in the Southern District of New York is obviously more convenient for them than venue in Philadelphia, 95 miles away. Housman Decl. ¶¶4-5. By contrast, plaintiff resides in Allentown, 63 miles from Philadelphia and 87 miles from New York City, so venue in New York is only slightly more inconvenient for him than venue in Philadelphia.

The principal third-party witnesses, *i.e.*, employees or representatives of The McGraw-Hill Companies, Inc., will probably be residents of either the Chicago area or the New York City area. Housman Decl. ¶6. No such third-party witnesses reside in Pennsylvania. Under the parties' agreement concerning "Governing Law," New York law governs not only with respect to issues of contractual interpretation but also, defendants submit, with respect to the elements of tortious interference. *See* p. 3, note 1 above.

This Court should therefore give effect to the parties' contractual agreement.  To the extent this action is not dismissed pursuant to Rule 12(b)(6), it should therefore be transferred to the Southern District of New York pursuant to 28 U.S.C. §1404(a).

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted should be granted, but if the Amended Complaint is not dismissed, this action should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,

JACOBS DEBRAUWERE LLP

By:_____
     John F. Burleigh, Esq.
     445 Park Avenue 17th Floor
     New York, New York 10022
Attorneys for Defendants Jungle Interactive Media, Inc. and Jon Housman

Dated: August 13, 2003
     New York, New York

Of counsel:
Robert J. deBrauwere, Esq.
Barbara J. Lipshutz, Esq.