IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUSSELL WILD,<br>          PLAINTIFF<br><br>VS.<br><br>JUNGLE MEDIA GROUP AND<br>JON J. HOUSMAN,<br>          DEFENDANT | NO. 02-CV-5123 WY |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) OR, IF THE AMENDED COMPLAINT IS NOT DISMISSED, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

I.   PRELIMINARY STATEMENT

This action arises from Defendant's tortious interference with Plaintiff's contract with Publisher McGraw Hill for the publication of a book to be authored by Plaintiff, tentatively titled "The Instant MBA".

On or about March 6, 2002, Plaintiff Russell Wild submitted a proposal to Publisher McGraw Hill in its Chicago office for publication of "The Instant MBA". Approximately one-third of the book was to consist of material authored by Plaintiff which had been previously published in Defendant, Jungle Interactive Media Inc.'s magazine, *MBA Jungle*. Plaintiff and McGraw Hill entered into negotiations and, by mid-March, had resolved all drafting issues and reached a final agreement on the terms of an Author Agreement. At that point, McGraw Hill was prepared to issue final signing copies of the contract.

At some point in mid-March 2002, Plaintiff received a telephone call from the new editor of *MBA Jungle*, Vince Bielski. Mr. Bielski advised Plaintiff that he had learned of Plaintiff's pending

McGraw Hill contract and made the claim that publication of the book by McGraw Hill would constitute a breach of Plaintiff's contracts with Defendant, Jungle Interactive Media, relating to those articles originally authored by Plaintiff for publication in *MBA Jungle*.

In response, Plaintiff advised Mr. Bielski, who had not been the editor at the time Plaintiff negotiated the agreements with Defendant, Jungle Interactive Media, that the grant of rights provision set forth in Section 5.1, relied upon by Mr. Bielski, had been negotiated only to prohibit republication of *MBA Jungle* content authored by Plaintiff in a competitive magazine or website and that the understanding and clear intent of the parties was that Plaintiff was free to author and publish a book incorporating all or part of the previously published *MBA Jungle* content.

Following Mr. Bielski's telephone conversation with Plaintiff, counsel for Plaintiff forwarded a letter to Mr. Bielski advising that Defendant, Jungle Interactive Media's reliance on Section 5.1 of the Author Agreement was misplaced. Rather than responding to Plaintiff or counsel for Plaintiff, counsel for Defendant instead forwarded a letter on March 15, 2002, to McGraw Hill and McGraw Hill's legal department. In that letter, counsel for Defendant cited Section 5.1 of the aforementioned contract as support for Defendant, Jungle Interactive Media's position that Plaintiff had no right to reuse any *MBA Jungle* published material in a book without Defendant Jungle's prior written permission. Counsel for Defendant also threatened McGraw Hill with a lawsuit if it published said book.

On March 19, 2002, Defendant, Jon J. Housman, publisher of *MBA Jungle*, telephoned Plaintiff's Chicago based editor at McGraw Hill, Danielle Egan-Miller. Defendant Housman contacted Ms. Egan-Miller to propose a business relationship between McGraw Hill and Jungle Interactive Media whereby Jungle Interactive Media would author a book on business tips substantially similar to the one which was already the subject of contract negotiations between Plaintiff and McGraw Hill. At the same time, in conversations with Plaintiff, Defendant Housman

2

also asserted proprietary rights in the underlying concept of Plaintiff's proposed book above and beyond Defendant, Jungle Media Group's alleged contractual rights regarding previously published *MBA Jungle* content authored by Plaintiff.  Specifically, Defendant Housman advised Plaintiff that he wanted Jungle Interactive Media to publish Plaintiff's book and that Plaintiff should sever his relationship with McGraw Hill.

After learning of Defendant Housman's unsolicited telephone call to McGraw Hill and his attempt to terminate Plaintiff's contractual relationship with McGraw Hill, counsel for Plaintiff contacted counsel for Defendant, Jungle Interactive Media and advised that Plaintiff considered such communication to be tortious interference.  In response, counsel for Defendant falsely asserted that Defendant Housman had communicated with McGraw Hill only to reassure McGraw Hill that the letter of March 15, 2002, from counsel for Defendant "did not reflect any acrimony between *MBA Jungle* and McGraw Hill."  In addition, counsel for Defendant asserted that Defendant Jungle Interactive Media's position was that, pursuant to the restrictions set forth in Plaintiff's Freelance Agreements, he "has no right to enter into any contracts regarding the 'What B School Didn't Teach Me' . . .".  Indeed, on March 25, 2002, McGraw Hill expressed concern to Plaintiff that Defendant Jungle Interactive Media was claiming proprietary rights in Plaintiff's business school column concept and that Plaintiff had no right to author anything based on that or a similar concept. Thereafter, on or about March 30, 2002, McGraw Hill advised Plaintiff that given the threat of litigation by Defendant Jungle Interactive Media, McGraw Hill would not proceed with publication of Plaintiff's book, absent written assurances from Defendant Jungle Interactive Media that it would not institute litigation against McGraw Hill if it published the Instant MBA.

To date, despite numerous requests from Plaintiff, Defendant Jungle Interactive Media has failed and or refused to provide such assurances.

**II.     ARGUMENT**

A.   PLAINTIFF'S CLAIMS FOR TORTIOUS INTERFERENCE ARE SUFFICIENT TO WITHSTAND DEFENDANTS' PROCEDURAL CHALLENGES UNDER F.R.C.P. 12(B)(6).

It is well established that a complaint should not be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his or her claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41 (1957); Instrumentation Associates, Inc. v. Madsen Electronics, (Canada) Ltd., 859 F.2d 4 C.A.3 (Pa.) 1988.  Thus, the question before the Court on a Motion to Dismiss is whether the Plaintiff can prove any set of facts in support of his claims that will entitle him to relief, not whether he will ultimately prevail. Ferry v. Mutual Life Insurance Co. of New York, W.D. Pa., 1994, 868 F.Supp 764.  Moreover, a Plaintiff should be given the opportunity to develop a claim for tortious interference unless it is manifestly clear that the elements of the claim cannot be made Kachmar v. Sungard Data Systems, Inc., 109 F.3d 173 (3d Cir. 1997)

The parties are in agreement that the applicable law in Pennsylvania governing claims for intentional interference with prospective contractual relations requires a plaintiff to prove the following elements:  (1) a prospective contractual relationship;  (2) the purpose or intent to harm plaintiff by preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) occurrence of actual damage; and (5) a reasonable likelihood that the relationship would have occurred but for the defendant's interference. Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466 (1979); Peoples Mortgage Co. Inc. v. Federal Nat'l Mortgage Assn. 856 F.Supp. 910, 932 (E.D. Pa. 1994).

In this case, several of the elements necessary to sustain this claim are apparently undisputed, inasmuch as Defendants have not raised them in their Motion to Dismiss.  It is clear and

4

apparently undisputed that a prospective contractual relationship between Plaintiff and McGraw Hill existed. The facts as alleged in paragraph 27 of the Amended Complaint (referencing Exhibit H to the Amended Complaint) are corroborative of the fact that there was a prospective contractual relationship between Plaintiff and McGraw Hill. See Exhibit H to Plaintiff's Amended Complaint, wherein Danielle Egan-Miller, then-Editor at McGraw Hill, stated to Plaintiff: "Clearly, the contract will be held up on our end until our folks [McGraw Hill's legal counsel] have assessed the situation…." Amended Complaint, Exhibit "H." Hence, the first element above is present. See also, Kachmar, 109 F.3d 173, 186.

There is also no question but that the fourth element, occurrence of actual damage, is present in this case. The prospective contractual relationship between Plaintiff and McGraw Hill was aborted, thereby depriving Plaintiff of a significant financial and professional commitment. If in fact it is determined that the basis for the termination of that relationship was attributable to the actions of Defendants, there is no question but that Plaintiff can establish an actual damage or injury for which Defendants are liable.

Similarly, there is no question at this juncture that the fifth element of the cause of action is present. The reasonable likelihood that the relationship [between Plaintiff and McGraw Hill] would have occurred but for the interference by Defendants is established for purposes of deciding this Motion by the allegations of the Amended Complaint which contend that Plaintiff and McGraw Hill had resolved all issues relative to their prospective contractual relation, and that McGraw Hill was about to issue final signing copies of the contract. See Amended Complaint, paragraph 15. See also, Amended Complaint, paragraph 27, and Exhibit H thereto, as discussed above. The email from Danielle Egan-Miller makes it clear that a "contract" was in the works between Plaintiff and McGraw Hill, and that it was being "held up" while legal counsel for McGraw Hill reviewed Jungle Media's claims. No other doubts concerning the likelihood of an ultimate contract were expressed

by Ms. Egan-Miller, and, in fact, her email makes it clear that she and Plaintiff were instead at the point of discussing the specific content of the anticipated book. These facts, if proven to be true, would establish the fifth element of Plaintiff's cause of action, a reasonable likelihood that the relationship would have occurred.

The primary thrust of Defendant's Motion to Dismiss is that two of the five elements of this cause of action are lacking: (2) the purpose or intent to harm plaintiff by preventing the relationship from occurring; and (3) the absence of privilege or justification on the part of the defendant. Plaintiff respectfully submits that for purposes of deciding Defendants' Motion to Dismiss, the facts as pleaded sufficiently make out these two elements of the claim, and that combined with the other three elements already discussed above, Plaintiff's claim for interference with prospective contractual relations should survive this procedural challenge.

> A. DEFENDANTS' CONDUCT ESTABLISHES A PURPOSE OR INTENT TO HARM PLAINTIFF BY PREVENTING HIM FROM CONTRACTING WITH MCGRAW HILL.

Defendants' Motion and Memorandum of Law does not substantively address the element of "purpose or intent to harm," but rather, focuses almost exclusively on a claimed "privilege" to have acted in the manner in which they did, based on their "good faith" belief that Jungle had legally protected interests under its Agreements with Plaintiff. Plaintiff's contention that there is an absence of a privilege or justification on the part of Defendants is addressed *infra* in Section III(A)(2) below. Because of the requirement that Plaintiff sufficiently plead each element of his cause of action, however, and because the issues of purpose and intent are inextricably woven together with the issues of lack of justification or privilege, the former element is addressed herein.

Until the time that Defendants learned of Plaintiff's prospective book deal with McGraw Hill, no overtures were made by Defendants to secure Plaintiff's authorization to use his articles in a compendium or collection of any book to be published by Jungle Media. See Affidavit

6

of Russell Wild. Moreover, Defendants have made no such contention in their papers, nor was such a contention made by Defendant Housman or Jungle's counsel in their contacts with various representatives at McGraw Hill and with Plaintiff prior to institution of this litigation. See Affidavit of Russell Wild. Rather, not until such time as the contemplated book deal between Plaintiff and McGraw Hill became public by virtue of a notice appearing in a trade publication did Defendants evince any interest whatsoever in the topic and substance of a book such as had been pitched by Plaintiff to McGraw Hill. See Affidavit of Russell Wild.

Furthermore, at this stage, when no discovery has even taken place, Plaintiff's Amended Complaint contains several contentions sufficient to support a claim that Defendants acted with the sole purpose of harming Plaintiff. Specifically, as Plaintiff alleges in his Amended Complaint, Defendant did more than simply send notice through their counsel to McGraw Hill that McGraw Hill's proposed publication of Plaintiff's book violated Defendants', purported contractual rights. Instead, as Plaintiff's Amended Complaint sets forth at Paragraphs 23, Defendant Housman actually called Plaintiff's editor at McGraw Hill and attempted to persuade her to renege on the deal for Plaintiff's book and instead enter into a similar deal with Jungle Media. Defendant Housman then attempted to convince Plaintiff that Jungle Media had proprietary rights in the underlying concept of Plaintiff's proposed book and that Plaintiff should publish the book with Jungle Interactive Media and sever his relationship with McGraw. See Amended Complaint, paragraph 30. The import is clear. Defendant was not simply acting in good faith to protect its own contractual rights -- it was, through Housman, actively working both sides to turn the McGraw Hill - Russell Wild deal into a deal of its [Jungle's] own.

Moreover, Defendant Housman was, in effect, warning Plaintiff that the only way Plaintiff could ever publish such a book would be to do so through Defendant, Jungle Interactive Media. Defendant Housman's statement is clearly suggestive of an intent to harm Plaintiff when

7

considered in view of the very Author Agreement that Defendants here attempt to rely upon. That Agreement, at Section 4.1, clearly gives Jungle Interactive Media only an exclusive right to use Plaintiff's work for a specified "Exclusivity Period." Thereafter, as set forth in paragraphs 5.1 and 5.2 of the Agreement, Plaintiff had the right to authorize the use of his work by others, provided that certain conditions were met. In essence, Defendants were clearly attempting to strong-arm Plaintiff into granting them rights which they did not otherwise have, by threatening him with litigation.

Considered in the light most favorable to Plaintiff, these allegations, standing on their own, constitute a contention that Defendants acted with the sole purpose of harming Plaintiff to the extent that they knew full well that the Defendants would need Plaintiff's permission to publish their own book of his columns and that, Plaintiff would never agree to such an arrangement. In short, given the threat of litigation by Defendants and Plaintiff's response thereto, which preceded Defendant Housman's call to Danielle Egan-Miller at McGraw Hill, Defendants knew or should have known that Plaintiff was committed to his contractual relationship with McGraw Hill and would never provide the permissions needed by Defendants to publish a book of Plaintiff's columns pursuant to Section 4.1 of the Author Agreement.

The foregoing facts clearly establish that Plaintiff's claim survives an analysis of whether he has satisfactorily pled (and has evidence to support) the necessary element of showing Defendants' intent to harm him by interfering with his contractual relationship with McGraw Hill.

    B.    THERE IS AN ABSENCE OF PRIVILEGE OR JUSTIFICATION FOR DEFENDANTS' ACTIONS.

It is to the element of "privilege" or "justification" that Defendants primarily address their motion to dismiss Plaintiff's claims. In support thereof, they contend that their collective actions were justified because Jungle Media had a good faith belief that it had legally protected interests in the Agreements between Plaintiff and Jungle Media that would be impaired by performance of the prospective contract between Plaintiff and McGraw Hill. *See, e.g.*, Schulman v. J.P. Morgan Inv. Mgmt. Inc., 35 F.2d 799 (3d Cir. 1994).

Defendants would have this court adopt the position that in any context where two sides have differing views of a contract's interpretation and application, one party is free to interfere with the other's prospective contractual relationship with a third party. Plaintiff submits that such a reading of the applicable case law would result in the absurdity of permitting any party, under any circumstances involving a contract, to simply claim that it had interpreted their contract to mean that it had legitimate legal rights which needed to be protected by interfering with the other's prospective contractual relations with another entity or party. In such a situation, the law governing this tort would quickly be chiseled away by frivolous claims of good faith interpretations of contract rights.

Instead, for purposes of deciding Defendants' Motion to Dismiss, this Court must look to the allegations of Plaintiff's Amended Complaint, and specifically, to Plaintiff's claims that Defendants' actions were not privileged or justified, and the facts alleged in support thereof.

Counts I and II of the Amended Complaint allege that Defendants made false claims to McGraw Hill that Defendant Jungle Media had a proprietary claim to Plaintiff's articles. It is further alleged that Defendant then threatened litigation against McGraw Hill and Plaintiff if those two parties continued along the path of finalizing a book deal. Plaintiff further alleges specifically

9

in paragraph 43 of the Amended Complaint that Defendants knew, <u>based on [their] negotiations with Plaintiff, that the parties' intent regarding Section 5.1 of the contract between [the parties] was not to preclude or prevent Plaintiff from republishing previously published MBA Jungle content in a book of his own.</u> [1]

As Plaintiff has alleged in his Amended Complaint, he was contacted by Jungle Media's then-Editor-in-Chief (rather than the other way around), soliciting him to author a column consisting of short business tips. See Amended Complaint, Paragraphs 5 and 6. Plaintiff further alleges, with specificity, that he advised Jungle that "…he was primarily a book author and specifically wanted the right to republish columns authored by him for publication in MBA Jungle in a book of his own in the future." See, Amended Complaint, Paragraphs 5 and 6.

Thus, Defendants' claims in their Motion to Dismiss, that they had a good faith belief that they had a legally protected contractual interest which they were justified (or privileged) to protect by interfering with Plaintiff's relationship with McGraw Hill, must therefore be viewed against the backdrop of Plaintiff's claims that are set forth in the Amended Complaint that he advised Jungle that he was a book author and wanted the right to reuse all work written by him for MBA Jungle in a subsequent book, and that those concerns were addressed in the ultimate contract between Plaintiff and Jungle.

If accepted as true for purposes of consideration of this Motion to Dismiss, Plaintiff's allegations are sufficient to obviate any claim by Defendants of privilege or justification. Plaintiff

---

[1] Admittedly, the parties have a difference of opinion – as set forth thus far in the pleadings filed in this litigation – as to the meaning and interpretation of Section 5.1 of the Agreement. Defendants have exhaustively argued in their Motion and Memorandum of Law the position they believe the Court should take with respect to Section 5.1. Rather than addressing the substance of those contentions, point by point, which would essentially require a decision on the ultimate merits of this case, Plaintiff submits that arriving at a resolution of the meaning of the contractual provisions is not required at this early stage of this litigation, when the allegations of the Amended Complaint clearly are sufficient to withstand a preliminary procedural challenge in the form of a 12(b)(6) motion to dismiss. To the extent that the Court deems it proper or necessary to analyze Section 5.1 of the underlying Agreement, Plaintiff respectfully refers to and hereby incorporates by reference, his Memorandum of Law in Opposition to Defendant's first Motion to Dismiss the original Complaint, at Pages 7 through 11.

should be permitted to prove in this litigation, the facts which would establish that Defendants knew (before contracting with Plaintiff) that he intended to reuse his work in subsequent books, and that they had negotiated both to permit Plaintiff to do that with certain limitations applicable to the timing of reuse, and to give to Jungle Media a right to credit as the original publisher of the works reprinted.  See Agreement attached as Exhibit "A" to the Amended Complaint, at Paragraphs 5.1 and 5.2.  Proof of the discussions leading up to incorporation of those terms of the contract would clearly refute Defendants' claims that they had a reasonable basis for believing that they had a legally protected interest that needed to be preserved by their interference with Plaintiff's relationship with McGraw Hill.  Therefore, Defendants Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be denied because Defendant's motion fails to demonstrate beyond doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  In re Meridian Securities Litigation, 772 F.Supp. 223 (E.D. Pa. 1992); Kachmar, 109 F.3d 173 (3d Cir. 1997).

Defendants also attempt to convince this Court that they are entitled to a "competitor's privilege" as set forth in the Restatement (Second) of Torts, section 768.  However, that argument is misplaced, as the competitor's privilege is designed to protect one who intentionally causes a third person (in this case, McGraw Hill) not to enter into a prospective contractual relation with another who is his competitor.  In order for there to be such a privilege in this case, the Court would have to strain to accept that Plaintiff and Defendants were competitors, which is absurd.  Defendant Jungle Media is a publisher of magazines; Plaintiff is a freelance writer.  The parties do not compete for work – rather, Defendants publish a magazine which has editorial content and in which they sell advertising space to secure revenues.  Plaintiff is a writer – in essence, a "supplier" of goods – a purveyor of written work to be included in such publications.  Defendants' averment that they

11

enjoyed a competitor's privilege to interfere with Plaintiff's prospective contractual relations should therefore be categorically dismissed.

      B.      DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT 28 U.S.C. SECTION 1404(A) SHOULD BE DENIED.

Defendants argue, in the alternative, that in the event their Motion to Dismiss is denied, the case should be transferred to the United States District Court for the Southern District of New York. Defendants' argument in this regard depends on a forum selection clause in the Author Agreements between Plaintiff and Defendants. Defendants claim, erroneously, that Plaintiff expressly agreed that this particular action must exclusively be brought in New York Courts

Pursuant to 28 U.S.C. Section 1404(a), a plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of the movant. Figgie International, Inc. v. Destiliria Serralles Inc., 925 F. Supp. 411 (D.S.C. 1996). Even if such a transfer would benefit the Defendants significantly, a Court should not grant the Motion if the net result would merely be to shift the inconvenience to the Plaintiff. Burstein v. Applied Extrusion Technologies, Inc., 829 F. Supp. 106 (D Del. 1992); Bolles v. K-Mart Corp., 2001 WL 767605 (E.D. Pa. 2001). The moving party bears the burden of showing that a balancing of the pertinent factors weighs in favor of transfer. Tyler v. Rental Service Corp., 2002 WL 192590 (E.D. Pa. 2002).

Defendants contend that their own witnesses are employees who reside in New York City. However, that fact alone is not sufficient to justify a transfer in venue. A corporation is better able to absorb the financial costs of litigating outside its home forum, and, to the extent its key witnesses are employees, they can be persuaded to appear in Court outside of the home forum. See Anderson v. Century Products Co. 943 F. Supp. 137 (D.N.H. 1996). Indeed, the relative financial strength of the parties to absorb the costs of litigation is a valid consideration in the transfer of venue analysis. Ashmore v. Northeast Petroleum Dive of Cargill, Inc. 925 F. Supp. (D.M.E. 1996);

12

Lappe v. American Honda Motor Co. Inc., 857 F. Supp. 222 (N.D.N.Y. 1994).  Here, Defendants are certainly better able to bear the costs of litigation in Pennsylvania - - certainly more so than Plaintiff would be able to handle the costs of litigation in New York.

The only third party witness identified by either party thus far is a McGraw Hill employee, Danielle Egan-Miller, who, upon information and belief, works and resides in Chicago, Illinois.  Relatively speaking, travel from Chicago to Philadelphia is no more inconvenient than travel from Chicago to New York and, taking traffic into consideration, the trip from the Philadelphia International Airport to the United States District Court for the Eastern District located in Philadelphia will almost certainly be less time consuming than travel to the United States District Court for the Southern District of New York from either Newark International Airport or either of New York City's International Airports.  Given the weakness of the Defendants' arguments on this point, Defendant's Motion for a Transfer of Venue, to the extent that it rests on general considerations, should be denied.

Defendant's principal argument for a change of venue, then, rests again on the Author Agreements previously entered into between Plaintiff and Defendant, Jungle Interactive Media.  Defendants quote Section 7.4 (contained in each pertinent agreement entered into between Plaintiff and Defendant, Jungle regarding publication of his columns and Defendant's Magazine *MBA Jungle*) which reads as follows:

> 7.4  Governing Law.  This Agreement shall be governed by and construed under the laws of the State of New York, without regard to conflicts of laws provisions thereof.  Any disagreements or disputes arising under this Agreement shall be exclusively resolved in State or Federal Courts located in New York, New York.

See Amended Complaint, Exhibit "A".  Focusing on the second full sentence, Defendants claim that Plaintiff's tortious interference claim constitutes a disagreement or dispute arising under that

13

Agreement. This is simply not true. Instead, those agreements are part of this case only because Defendants have seized upon them as an improbable defense to their otherwise inexcusable conduct here.

A forum selection clause does not oust a competent court of jurisdiction but in its discretion, a court can decline to exercise jurisdiction in the face of such a clause. <u>Nova Ribbon Products v. Lincoln Ribbon, Inc.</u>, 1992 WL 21154 (E.D. Pa. 1992), <u>M/S Bremen v. Zapata Offshore Cove</u>., 47 U.S. 1 (1972). The forum selection clause at issue here, though, is a narrow one and should not be applied to Plaintiff's tortious interference claim. Where a forum selection clause is "limited to disputes over the terms of the Agreement or any disputes arising under the Agreement" it should not be construed to include all claims, whether based on contract, tort, or statute. See <u>Nova Ribbon</u> at *7. In <u>Ribbon</u>, non-contractual theories of liability. <u>Id.</u> It is true, so that in general the federal courts have applied forum selection clauses to tort claims where the clause does not explicitly limit the actions to those arising under or connection with the contract. See <u>John Wyeth & Brother Limited v. Cigma International Corp.</u>, 1919 F. A.3d 1070 (3rd Cir. 1997). Defendants rely principally upon the Third Circuit's decision in <u>Crescent International Inc. v. Abbottir Communications Inc</u>., 857 F Supp. A.2d 943 (3rd Cir. 1988) to claim that Plaintiff's tortious interference claim is governed by the forum selection clause in question.

<u>Crescent</u>, however, is distinguishable from this case. First, the tortious interference claim in question there was an ancillary one. The main claim involved was one of breach of contract, unquestionably subject to the forum selection clause at issue. Revisiting the issue in <u>John Wyeth & Brother Limited</u>, the Third Circuit, however, focused on the specific phrasing of the forum selection clause to determine its scope and application.

In <u>John Wyeth</u>, the Third Circuit was faced with a forum selection clause covering "any dispute arising…in relation to "the Agreement". Analyzing that phrase, the Court determined that

14

"to say dispute" arise(s)…in relation to "…Agreement is to say that the origin of the dispute is related to that Agreement, i.e., that the origin of the dispute has some logical or causal connection" to the…Agreement."" Id. 1074.  Thus, the clause in John Wyeth was not limited to disputes growing out of the Agreement insofar as "it applied, not only to disputes arising under or out of that Agreement, but also to those arising in relation to that Agreement." Id.  Finally, the Third Circuit observed that "the phrase 'arising in relation to' is broader than 'arising under.' " Id. 1075.

In this matter, the forum selection clause invoked by Defendants is limited to claims "arising under" the Author Agreement. The Defendants drafted that Agreement and have maintained that Plaintiff is stuck with the forum selection clause of New York, along with Defendants' strained application of Section 5.1 therein. Arguably, Defendants' attempt to avoid an otherwise open and shut tortious interference claim by pointing to purported contractual rights conferred by that Agreement, does suggest that tortious interference claim has, by virtue of Defendants' defense, some logical or causal connection to that Agreement.  But a logical or causal connection created by a strained defense alone is not sufficient.

As the Third Circuit makes clear in John Wyeth, the decision whether to apply a forum selection clause must depend on the language of that clause.  Because Defendants' reliance on Section 5.1 of the Author Agreement discussed above necessarily involves a strained and unsupportable interpretation of the grant of rights set forth therein, Plaintiff's tortious interference claim cannot be said to constitute a disagreement or dispute "arising under" that Agreement. Defendants' argument that it does "arise under", essentially amounts to a simple tautology.  It arises under because they say it does.  The rights Defendants claim are found nowhere in the Agreement they claim vests them with the ability to interfere with Plaintiff's right to contract with others, and which they try to invoke to also defeat Plaintiff's choice of forum.  These efforts should be denied.

**III.     CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests this Honorable Court to dismiss Defendant's Motion to Dismiss pursuant to 12(b)(6) and its Motion to Transfer Venue Pursuant to 28 U.S.C. Section 1404(a).

> Respectfully submitted,
>
> GROSS, MCGINLEY, LABARRE & EATON, LLP
>
> BY: _____
> PAUL A. MCGINLEY, ESQUIRE
> *Attorney for Plaintiff, Russell Wild*
> 33 South Seventh Street, Post Office Box 4060
> Allentown, Pennsylvania 18105-4060
> Telephone:  (610) 820-5450
> Attorney I.D. # 19510

DATE:  September 15, 2003

W:\WDOX\CLIENTS\WILDRUS\JUNGLE\00005111.DOC

**CERTIFICATE OF SERVICE**

This is to certify that a copy of PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) OR, IF THE AMENDED COMPLAINT IS NOT DISMISSED, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) was served by both facimile transmission and First Class, United States Mail, postage prepaid, on this 15th day of September, 2003, upon the following:

JOHN F. BURLEIGH, ESQUIRE
JACOBS DEBRAUWERE LLP
445 PARK AVENUE
NEW YORK, NEW YORK 10022


GROSS, MCGINLEY, LABARRE & EATON, LLP


BY: _____
PAUL A. MCGINLEY, ESQUIRE
*Attorney for Plaintiff, Russell Wild*
33 South Seventh Street, Post Office Box 4060
Allentown, Pennsylvania 18105-4060
Telephone:  (610) 820-5450
Attorney I.D. # 19510

W:\WDOX\CLIENTS\WILDRUS\JUNGLE\00037891.DOC