IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| RUSSELL WILD, Plaintiff, <br><br> v. <br><br> JUNGLE MEDIA GROUP and JON J. HOUSMAN, Defendants. | CIVIL ACTION <br><br> NO. 02-5123 |

## Memorandum and Order

YOHN, J.                                                                                              March ___, 2004

    Russell Wild filed suit in the Court of Common Pleas of Lehigh County, Pennsylvania against defendants, Jungle Media Group ("Jungle Media") and Jon J. Housman claiming tortious interference with a prospective contract. The case was removed to this court on July 22, 2002. After oral argument, I granted the defendants' motion to dismiss pursuant to 12(b)(6) without prejudice to the right of the plaintiff to file an amended complaint. Wild then filed an amended complaint (Doc. #23), alleging that defendant Jungle Media tortiously interfered with plaintiff's prospective contract with publishing company McGraw-Hill ("McGraw-Hill") by falsely misrepresenting to McGraw-Hill that Jungle Media has a proprietary claim to plaintiff's articles and threatening litigation should the company sign a publishing contract with plaintiff (Count I). Additionally, plaintiff avers that defendant Housman tortiously interfered with the same prospective contract when he proposed to McGraw-Hill that the publisher abandon its

relationship with plaintiff and commence one with Jungle Media (Count II). Plaintiff also asks this court for a declaratory judgment against defendants Jungle Media and Housman, finding that under the Jungle Media contract the defendants have no proprietary interest in the articles (Count III). Finally, plaintiff brings a claim for conversion, alleging that defendants Jungle Media and Housman intentionally exercised dominion or control over plaintiff's articles by republishing them without plaintiff's permission and refusing to allow plaintiff to use his own articles to publish a book with McGraw-Hill (Count IV).

Currently pending before the court is defendants' motion 1) to dismiss the amended complaint pursuant to Federal Rule Civil Procedure 12(b)(6) for failure to state a claim, and 2) alternatively, to transfer the case to the Southern District of New York pursuant to the forum selection clause contained in plaintiff's contract with defendant Jungle Media.

Defendants' motion to transfer venue will be denied. For the reasons discussed, defendants' motion to dismiss will be denied as to Counts I and granted as to Counts II, III and IV.

**Background**

The facts, as stated in the amended complaint, are as follows: the relationship between the parties began in June 2000 when representatives from Jungle Media[1] solicited Wild to write a column, referred to by the parties as "What B-School Didn't Teach Me," which would appear in *The MBA Jungle*, "a new, limited circulation magazine for MBA candidates published by Defendant Jungle." Amended Compl. ¶¶ 5, 6, 25.

---

[1] Although plaintiff refers to defendants by several names (e.g. "Jungle Interactive Media" and "Jungle Media Group"), the court assumes that the defendant of record is the entity to which plaintiff refers when using any of these names.

Wild and Jungle Media negotiated changes to and signed a standard author agreement ("Jungle Media contract"). *Id*. ¶ 7, 11. The agreement contained several provisions that limited Wild and Jungle Media's rights to republish the articles.[2] Wild signed this agreement prior to drafting each article for the *MBA Jungle. Id*. ¶ 10. The relationship between the parties appeared to be collegial until March 2002. Early in that month, Wild submitted a proposal for publication of a book of his writings, *The Instant MBA*, to McGraw-Hill, a Chicago-based publishing house. *Id.* ¶ 14. According to Wild, the articles he had written for Jungle Media and that were previously published in the *MBA Jungle* would comprise roughly one-third of his book. *Id.* However, before

---

[2] The contract contained the following provisions addressing the rights and restrictions upon the parties:

Section 4.1 (a): Writer hereby grants to Jungle . . . [t]he exclusive rights to first publish the Article . . . which exclusivity lasts from the date of this Agreement until 90 days beyond the first publication of the Article. . . . Writer will not allow anyone else to publish or use the Article or any portions thereof or in any medium until after the expiration of the Exclusivity Period. If the article has not been published within one year of the signing of the contract, this contract shall be re-negotiated.

Section 4.1(c): Writer hereby grants to Jungle . . . [t]he right, for an amount equal to forty percent (40%) of the Fee, to republish the Article in any different printed publication; future edition; or as part of a collection, compendium or other compilation; or to allow any partner to republish the Article in such partner's printed publications, provided such collection, compendium or other compilation does not consist solely of Writer's work.

Section 4.1(e): Writer hereby grants to Jungle . . . [t]he right to authorize republication of the Article in English-language publications or on third-party web sites, for which Jungle will pay Writer an additional sum in the amount of fifty percent (50%) of the proceeds actually received by Jungle from the exploitation of any such reuse of the Article.

The Agreement placed the following restrictions on Wild:

Section 5.1: In addition to restrictions during the Exclusivity Period, Writer shall not authorize the use of the Article, at any time, in any publication, web site or other means of distribution by any business-oriented website or print publication, without the prior written permission of the Editor in Chief.

Section 5.2: On any subsequent grant of rights of any nature in the Article . . . Writer will include in any contract with the subsequent user an express requirement that the subsequent user credit Jungle as the original publisher of the Article. Such credit will appear in any subsequent reproduction of the Article.

plaintiff could sign a contract with the publisher, the Editor-in-Chief of *The MBA Jungle*, Vince Bielski, contacted Wild, advising him that, absent Bielski's written authorization, publishing the book with McGraw-Hill would constitute a breach of Wild's contract with Jungle Media. *Id*. ¶¶ 15-17. Specifically, Bielski stated that such conduct would violate Section 5.1 of the contract. *Id*. ¶ 17.

Wild responded that Bielski's interpretation of the Jungle Media contract was erroneous as it ignored Wild's articulated intention at the time of contracting; namely, to publish a book that would include Wild's work for Jungle Media. Amended Compl. ¶¶ 8, 12, 18. Plaintiff averred that Section 5.1 was only meant to prohibit republication by plaintiff in a competitive magazine or website, not a book that would incorporate all or part of previously published *MBA Jungle* content. *Id*. ¶ 18. Nonetheless, at that time, Wild sought Jungle Media's permission to republish the articles, which he subsequently did by submitting written requests. *Id*. ¶¶ 19, 22.[3] Despite plaintiff's attempts to obtain Jungle Media's permission, none was forthcoming. *Id*. ¶ 29.

Instead, Jungle Media's representatives engaged in conduct on two occasions that Wild classifies as tortious interference with his prospective relationship with McGraw-Hill. First, Jungle Media's attorneys contacted McGraw-Hill, informing the publisher of the Jungle Media contract and threatening civil litigation should McGraw-Hill elect to publish Wild's book without Jungle Media's written permission. *Id*. ¶ 20. Wild also alleges that soon after this conduct, defendant Jon Housman, who is a co-founder of Jungle Media, allegedly proposed to McGraw-Hill that the publisher terminate its relationship with Wild and instead begin one with Jungle Media. *Id*. ¶¶ 23,

---

[3] Wild made two written attempts to receive Jungle Media's permission on March 15 and 19 of 2002. Pl. Ex. B and E.

30. Soon after these interactions with defendants, McGraw-Hill advised Wild in the last days of March 2002 that it would not proceed with the publication of his book absent Jungle Media's written permission to republish the articles. *Id.* ¶ 28.

Plaintiff avers that defendant also improperly published an article entitled "Stop, Look and Listen" on its website on April 1, 2002, and published other articles of his in the March and May print issue of the *MBA Jungle* in violation of the provision of the Jungle Media contract that provides that "[i]f the article has not been published within one year of the signing of this Contract, this Contract shall be renegotiated." *Id.* ¶¶ 32-33, 36.[4] Plaintiff alleges that Jungle Media had these articles in its inventory "for well in excess of one year" and did not publish them until it became aware of plaintiff's prospective contractual relationship with McGraw-Hill. *Id.* ¶ 37. Plaintiff does not allege when the corresponding contracts for these specific articles were signed.[5]

As a result of the above-detailed conduct, Wild brought the instant action in the Court of Common Pleas of Lehigh County against Jungle Media and Housman for tortiously interfering with his relationship with McGraw-Hill. On July 22, 2002, pursuant to 28 U.S.C. § 1441, Jungle Media and Housman removed the action to this court. On December 19, 2002, after oral argument, I granted defendant's motion to dismiss the complaint and dismissed plaintiff's complaint without prejudice to the right of the plaintiff to file an amended complaint. Plaintiff then filed an amended complaint (Doc. #23). Currently before the court is defendant's motion to

---

[4] The article published in May was entitled "What Goes Around." *Id.* ¶ 36.

[5] Wild signed nine contracts with the defendants: June 12, 2000, July 14, 2000, September 1, 2000, October 6, 2000, November 29, 2000, December 29, 2000, January 29, 2001, February 10, 2001. Wild's last contract with the defendants was signed June 1, 2001. *Id.* ¶ 11.

transfer venue pursuant to §1404(a) and to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

**I. Motion to Dismiss Pursuant to 12(b)(6)**

**Standard of Review**

In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in the plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (citations omitted); *Colburn v. Upper Darby Township*, 838 F.2d 663, 665-66 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (citations omitted). Although the court must construe the complaint in the light most favorable to the plaintiff, it need not accept as true legal conclusions or unwarranted factual inferences. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Claims should be dismissed under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Id.*

**Counts I & II**

In Counts I and II of his amended complaint, plaintiff alleges that Jungle Media, through Housman, falsely asserted a proprietary interest in Wild's articles and improperly threatened litigation. Amended Compl. ¶¶ 40, 41, 51, 59. Wild claims that even though Jungle Media knew

that it had no rights to Wild's articles under the Jungle Media contract, defendants improperly interfered with plaintiff's prospective contractual relationship with McGraw-Hill by falsely misrepresenting to McGraw-Hill that Jungle Media had proprietary claims to plaintiff's articles and by improperly threatening litigation against McGraw-Hill and plaintiff. *Id*. Defendants argue that Wild's first two counts should be dismissed pursuant to a 12(b)(6) motion because plaintiff has failed to allege sufficient facts to show that defendants' conduct was not privileged or justified. Defendants also argue that Count II against Housman should be dismissed because plaintiff has failed to respond to defendant's motion to dismiss this count.

The parties agree that under Pennsylvania law, plaintiff must prove the following elements in order to state a claim for intentional interference with prospective contractual relations: (1) the existence of a prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to prevent a prospective relation from occurring; (3) the *absence of privilege or justification on the part of the defendant*; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *Crivelli v. GMC*, 215 F.3d 386, 394 (3d Cir. 2000) (emphasis added). Defendants argue that plaintiff has not pleaded facts sufficient to support the third element of his claim.[6]

---

[6] Defendants have applied Pennsylvania law in arguing their motion to dismiss; however, they continue to maintain that New York law applies to plaintiff's tortious interference claims.

Pennsylvania's "choice of law analysis first entails a determination of whether the laws of the competing states actually differ. If not, no further analysis is necessary." *Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 702 (Pa. Super. 2000). The Third Circuit similarly has held that "[w]here there is no difference between the laws of the forum state and those of the foreign jurisdiction, there is a 'false conflict' and the court need not decide the choice of law issue." *Lucker Mfg.,A Unit of Amclyde Engineered Products v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994)(citations omitted). The *Lucker* court cited favorably to a Court of Appeals opinion from the First Circuit which stated that a court was not required to engage in a conflict of law analysis if "the outcome is the same under the substantive law of either jurisdiction." *Id*. (citing

Defendants contend that their conduct was "privileged" because it was motivated by a reasonable good-faith belief in a legally protected interest and because they employed no wrongful means. Def.'s Memo. at 3. Defendants argue that a necessary element of this tort is *improper* conduct by the alleged tortfeasor and that under the Restatement (Second) of Torts §773, interference with contractual relations is "privileged" and not "improper" "when the actor believes in good faith that his legally protected interest may otherwise be impaired by the performance of the [prospective] contract." *Id.* at 4. Under § 767(a) of the Restatement, a threat of litigation is wrongful if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication." *Id*. at 5.

---

*Lambert v. Kysar*, 983 F.2d 1110, 1114-15 (1st Cir. 1993)).
     The court's analysis has revealed no relevant difference in the laws of these states on this issue. In both New York and Pennsylvania, in order to allege a viable claim for tortious interference with a prospective contract, plaintiff must claim that defendant intentionally interfered with a prospective contract or business relationship without justification or privilege thereby resulting in actual damages to plaintiff. *Guard-Life Corp. v. S. Parker Hardware Manufacturing Corp.*, 406 N.E.2d 445, 448-49 (N.Y. 1980); *Stratford Materials Corp. v. Jones*, 118 A.D.2d 559, 560 (N.Y. App. Div. 1986); *Glenn v. Point Park College*, 272 A.2d 895, 898 (Pa. 1971); *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979). In both states, a defendant's interference is justified based on a competitor's privilege if his own business or economic interest motivated his actions and he did not employ improper means while attempting to protect his rights. *Guard-Life*, 406 N.E.2d at 448; *Gilbert v Otterson*, 550 A.2d 550, 488-89 (Pa. Super. 1988). Additionally, under both states' common law, it is not improper to threaten a third party with civil litigation provided that the threat is not frivolous. *Pagliaccio v. Holborn Corp.*, 734 N.Y.S.2d 148, 148-49 (N.Y. App. Div. 2001); *Gresh v. Potter McCune Co.*, 344 A.2d 540 (Pa. Super. 1975).
     Because there are no relevant differences between the laws of New York and Pennsylvania regarding the first two counts of plaintiff's claim, the court will apply the law of Pennsylvania in so far as it is needed to address plaintiff's claims for tortious interference. *See Highmark Inc. v. Hospital Service Ass'n of Northeastern Pennsylvania*, 785 A.2d 93, 97 (Pa. Super. 2001) (applying Pennsylvania law in a case where all of the possible choices of law favored arbitration).

Yet, the question is not whether plaintiff has actually shown that defendants' acted without privilege or justification but whether the plaintiff has alleged sufficient facts to show absence of privilege or justification on the part of Jungle Media and Housman.

Plaintiff claims that Jungle Media and Housman did not act with privilege or justification because of the intention of the parties as reflected in the contract. According to the plaintiff, defendants told McGraw-Hill that under Section 5.1 of the agreement plaintiff had no right to reuse any MBA Jungle Media material in a book. Amended Compl. ¶ 20. However, plaintiff argues that this section of the contract does not prohibit publication of the articles because McGraw-Hill is not a "business-oriented website or print publication." *Id*. ¶ 21. Plaintiff contends that section 5.1 was meant "only to prohibit publication of *MBA Jungle* content authored by plaintiff in a *competitive* magazine or website. *Id*. ¶ 18 (emphasis added). He asserts that the understanding and clear intent of the parties was that plaintiff was free to author and publish a book incorporating all or part of that previously published *MBA Jungle* content." *Id*. ¶¶ 18, 43. In support of his averments, plaintiff alleges that in light of negotiations between Wild and Jungle Media, Section 5.1 was not meant to prevent Wild from using these articles. Amended Compl. ¶¶ 8, 12, 18. Plaintiff repeatedly mentions the negotiations in his complaint. *Id*. He argues that proof of these discussions leading up to the incorporation of those terms in the contract would refute defendants' assertions that they had a reasonable basis for believing that Jungle Media had a legally protected interest and that interference was proper. Pl.'s Memo. at 11. Plaintiff also alleges that the parties did not intend for Section 5.1 of the contract to preclude or prevent plaintiff from republishing the articles published by Jungle Media in a book of his own. Amended Compl. ¶ 43. He further alleges that when Jungle Media contacted him about writing articles, he stated that he

was primarily a book author and specifically wanted the right to republish columns authored by him for publication in *The MBA Jungle* in a book of his own in the future. Amended Compl. ¶¶ 8.

Defendants argue that plaintiff may not rely on discussions leading up to the signing of the contract. Def.'s Memo at 10-11. They contend that plaintiff's extrinsic evidence may not be considered because of the integration clause in section 7.5 of the agreement and because the terms of the contract are not ambiguous. *Id.*[7] I find that the terms of the contract are ambiguous, therefore extrinsic evidence may be considered.

Plaintiff also claims that based on their conduct defendants were not acting in good faith to protect Jungle Media's contractual rights. Plaintiff alleges that Jungle Media did more than simply send notice to McGraw-Hill that the proposed book publication violated its rights under the Jungle-Media contract. Instead, Jungle Media, through Housman, called McGraw-Hill and attempted to persuade plaintiff's editor at McGraw-Hill to abandon the deal with Wild and enter into a similar deal with Jungle Media. *Id.* ¶ 23. Plaintiff also alleges that defendant Jungle Media, through Housman, also attempted to convince plaintiff that Jungle Media had the rights to the underlying concept of the proposed book as well as Wild's articles such that Wild should publish a book with Jungle and sever his relationship with McGraw. *Id.* ¶ 30.

The allegations stated in plaintiff's amended complaint, if proved, could establish that the negotiations and discussions leading up to the signing of the Jungle Media contract resulted in a

---

[7] Section 7.5 states that "this agreement constitutes the entire agreement between the parties relating to the subject matter of this agreement and supercedes all proposals, negotiations, conversations, understandings, or discussions, whether written or oral, between the parties relating to the subject matter of this Agreement and all past dealing or industry custom, except for written agreement signed by the Editor and Chief or an executive officer of Jungle Media making reference to this Agreement and the clause to be changed." Def.'s Memo. at 11.

contract that was, at least, ambiguous and does not prevent plaintiff from republishing the articles that were previously published in the *MBA Jungle* in a book of his own and that defendants had no proprietary rights in the articles. As such, I will deny defendants' motion to dismiss Count I pursuant to 12(b)(6).[8] Because plaintiff has not responded to defendants' motion to dismiss Count II against individual defendant Jon Housman, I will dismiss Count II.

**Count III**

Under Count III of his complaint, Wild alleges that Jungle Media and Housman have no proprietary interest in the articles because all of the articles written by plaintiff for the *MBA Jungle* were written over one year ago, and the contracts corresponding to the articles have not been renegotiated pursuant to Section 4.1 of the Agreement. Amended Compl. ¶ 75. Wild asks this court for a declaratory judgment, finding that defendants have no present or future proprietary interest in the articles that Wild wrote for *MBA Jungle* on the basis of this theory. *Id*. at 16.

Section 4.1 of the Media Jungle contract states that Wild grants to Jungle "the exclusive right to first publish the Article, both electronically and in print, which exclusivity lasts from the date of this Agreement until ninety (90) days beyond the first publication of the Article in either medium noted above, whichever is earlier (Exclusivity Period). Writer will not allow anyone else

---

[8] Defendants also argue that the complaint must be dismissed because of the competitor's privilege discussed in section 768 of the Restatement, which requires a showing of improper interference, and because Housman was not solely motivated by malice. Determinations of defendants' improper interference and malice, like defendants' reasonable good faith belief, are better left at least to the summary judgment phase and perhaps to the trial stage of the proceedings.

11

to publish or use the Article or any portions thereof or in any medium until after the expiration of the Exclusivity Period. *If the article has not been published within one year of the signing of this contract, this contract shall be re-negotiated*." Jungle Media contract ¶ 4.1 (emphasis added).

Plaintiff bases his claim on the last sentence of Section 4.1(a), which indicates that the contract shall be re-negotiated if the articles are not published within one year. However, Wild only alleges that the articles were *written* over one year ago; he does not allege that the articles were not *published* within one year of the dates of the contracts. Amended Compl. ¶ 75. Plaintiff alleges that the parties entered into nine separate agreements on the following dates: June 12, 2000, July 14, 2000, September 1, 2000, October 6, 2000, November 29, 2000, January 29, 2001, February 10, 2001, and June 1, 2001. *Id*. ¶ 11. Yet, he does not allege with sufficient specificity that any of the articles corresponding to these contracts were never published, or that they were published one year after the contract dates. He does allege that three of plaintiff's articles were in defendant's inventory for "well in excess of one year" and that defendant published them after having them for one year; however he does not allege the necessary facts to show that these articles were under contract and the dates of these contracts. *Id*. ¶ 37. As such, plaintiff has failed to state a claim for declaratory judgment.

Moreover, plaintiff does not respond in his brief to defendants' arguments with reference to Count III. He has therefore abandoned this claim. I will grant defendants' motion to dismiss Count III pursuant to 12(b)(6).

**Count IV**

Under Count IV of the amended complaint, plaintiff brings a claim for conversion. *Id*. at

16. Wild asserts at least two theories for his claim, though they are not clearly presented as such.

First, Wild claims that the defendants "exercised dominion and control over plaintiff's articles by *re*publishing [his articles] after the expiration of the one (1) year period without plaintiff's permission." *Id*. ¶ 81 (emphasis added). He alleges that Jungle Media was "only authorized to use plaintiff's articles beyond such *first* publication only if it compensated plaintiff for using the articles pursuant to the terms set forth in Section 4 of the Agreement." Amended Compl. ¶ 79 (emphasis added). Yet, Wild simply does not allege sufficient facts under this theory to state a claim for conversion. By his use of the term "republished," Wild alleges that defendants had already published his articles, though he does not provide dates of publication. Wild's claim cannot withstand a 12(b)(6) motion to dismiss without identifying the articles and without providing the dates of first publication, the alleged violation publication dates, and the corresponding contract dates for each of the articles. Wild provides dates of contract formation; however, he does not allege dates of republication nor has he defined for the court the "one-year period" for each article to show that publication beyond this time period was a violation.

Wild also avers that under Section 4.1 of the Jungle Media contract, Jungle only had rights in the articles for one year from the date of the corresponding contract. Amended Compl. ¶ 80. It seems that under this theory plaintiff is focused on the three specific articles he mentions in the background section of his complaint (specifically mentioned are "Stop, Look and Listen" published on the website on April 1, 2002; "What Goes Around," published in the May print issue; and a third unidentified article, published in the March print issue). Plaintiff claims that these articles were not published within one year of signing the contracts, and that because the Jungle Media contract was not re-negotiated, defendants no longer have rights to the articles. Amended

Compl. ¶ 37. Yet, for plaintiff to base his claim of conversion on this theory, he must aver facts that show that the articles were not published within one year of the signing of each of the corresponding contracts. Plaintiff has provided contract dates, however, it is impossible to know based upon his allegations which contract dates apply to which articles. His latest contract is dated June 1, 2001, less than one year from the 2002 March, April, and May publication dates, but it is unclear which articles this agreement governs.

Again, plaintiff has failed to respond to defendants' arguments on the issue and has, therefore, abandoned this claim. Count IV will be dismissed.

**II. Motion to Transfer Venue Pursuant to § 1404(a)**

Defendants move to transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) on the ground that the plaintiff expressly agreed in a forum selection clause that actions must be brought in New York courts. Plaintiff argues that transfer of his tort claims is inappropriate because the forum selection clause applies only to claims "arising under" the agreement, which he argues do not include his non-contractual claims. Thus, the parties dispute the meaning of the phrase "arising under" as it defines the scope of the forum selection clause. For the reasons discussed below, I find that this case should not be transferred to the Southern District of New York.

Under § 1404(a), a district court may transfer a civil case to another district or division where it might have been brought "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of

convenience and fairness.'" *Stewart Org. Inc. et al. v. Ricoh Corp. et al.*, 487 U.S. 22, 29 (1988). The presence of a forum selection clause is a "significant factor that figures centrally into the district court's calculus." *Id*. Deciding whether the action should be transferred involves a multi-factored test, which incorporates the forum selection clause "as one facet of the convenience-of-the-parties consideration." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995). According to the Third Circuit, a forum selection clause is treated as "a manifestation of the parties' private preferences as to a convenient forum" and is among the relevant private interests courts consider when deciding whether to transfer venue. *Id*.[9] A valid forum selection clause is entitled to "substantial consideration," although it should not receive dispositive weight. *Id*.[10] If the forum selection clause is valid, "plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." *Id*. In deciding whether or not to transfer venue, the court must also consider a number of public factors.[11]

Before reaching the issue of whether the parties should be bound by their contractual

---

[9] The Third Circuit has articulated the relevant private interests as: (1) plaintiffs' forum preference as manifested in their original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) convenience of the parties based on their relative physical and financial situations; (5) convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (also limited to the extent that files could not be produced in the alternative forum). *Jumara*, 55 F.3d at 879.

[10] Validity requires that there have been no "fraud, influence, or overweening bargaining power." *Jumara*, 55 F.3d at 880 (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972)).

[11] According to the Third Circuit, the relevant public interests include: (1) the enforceability of the judgment; (2) the practical considerations that might make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the two fora; and (6) the familiarity of the trial judge with the applicable state law. *Jumara*, 55 F.3d at 880.

choice of forum, I must first address whether the clause applies to this dispute. "[W]hether or not a forum selection clause applies depends on what the specific clause at issue says." *Wyeth & Bro. Ltd. v. Cigna Int'l. Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997). All nine agreements between Wild and Jungle included the following provision: "Any disagreements or disputes *arising under this Agreement* shall be exclusively resolved in state or federal courts located in New York, New York." Jungle Media contract ¶ 7.4 (emphasis added). Thus, the forum selection clause applies to this dispute only if plaintiff's claims "arise under" the agreements.

Defendants argue that Wild's non-contractual claims arise under the agreements because plaintiff's claims arise out of the parties contractual relationship and because the complaint itself implicates the contract's terms. Def.'s Memo. at 23. Defendants contend that in order to show tortious interference plaintiff must plead and prove that defendants acted without privilege or justification, and thus adjudication of the parties' rights under the contracts is part of plaintiff's case in chief. *Id*. at 24. Plaintiff counters that the forum selection clause is inapplicable because he brings tort claims, which, unlike contract claims, do not "arise under" the agreements he signed. Pl.'s Memo. at 13-15. Wild also argues that the agreements are part of this case only because defendants have raised them as part of their defense. *Id*. at 14.

The Third Circuit has not directly addressed the application of a forum selection clause to non-contractual claims where the language of the clause governs claims that "arise under" the contract and where the plaintiff did not have contractual claims. The cases cited by both parties are distinguishable from the present case. As plaintiff points out, the Third Circuit has specifically stated that "the scope of 'related to' jurisdiction is broader than the scope of 'arising under' jurisdiction." *Wyeth*, 119 F.3d at 1075-76. However, *Wyeth* is inapposite because the court did

16

not address "arising under" language but based its findings upon the forum selection clause's "arising in relation to" language. According to the Third Circuit, "[d]rawing an analogy to other cases is useful only to the extent those other cases address contract language that is the same or substantially similar." *Id.* at 1075.

The cases that defendants cite are also distinguishable because the essence of plaintiff's claims is tortious. In *Crescent Int'l, Inc. v. Avatar Communities, Inc. et al.*, 857 F.2d 943, 944 (3d Cir. 1988) and *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), both cited by defendants, the plaintiffs raised contract claims in addition to asserting tort claims. The essence of their claims was contractual, not tortious. Because plaintiff's remaining claim is in tort and the essence of his entire amended complaint sounds in tort, not contract, I find that the forum selection clause has limited force, and, as will be seen, that force is outweighed to the extent that I consider it in conjunction with the *Jumara* factors.

The parties' manifestation of their preferences in a forum selection clause is only one factor courts consider when determining whether venue is appropriate. *Id.* "Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court must also weigh in the balance the convenience of the witnesses and those public-interest factors of systematic integrity and fairness." *Stewart,* 487 U.S. at 30.

The private factors, aside from the parties' manifestation of their preferences as expressed in the forum selection clause, weigh in Wild's favor. Plaintiff argues that a corporation is better able to absorb the financial costs of litigating outside its home forum. Pl.'s Memo. at 12. Plaintiff resides in Allentown, Pennsylvania, and contends that the costs of litigating in the Southern

17

District of New York would be burdensome. Wild Affidavit ¶ 11. In his affidavit, he states: "It would be a substantial hardship for me to incur costs and expenses associated with travel to and accommodations in New York City, . . . and in all likelihood, I would be unable to maintain this action due to such costs." *Id*. ¶ 11. Wild also asserts that the cost of retaining counsel in New York City would be prohibitively expensive. *Id*. Wild states that as a sole proprietor, the additional time required for travel to New York City would pose a substantial impediment to conducting his ordinary business affairs. *Id*. ¶ 12.

Addressing other factors, the convenience of the witnesses will only be considered "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. There is no evidence that defendants' witnesses, located in Chicago and New York, will be unavailable to testify in either Philadelphia or New York.

The public factors listed in *Jumara* do not weigh heavily in favor of either party. There is no reason that a judgment in either district could not be enforced elsewhere or that either court cannot apply the laws of Pennsylvania or New York. There is no evidence that trial would be easier or more expeditious in either district. Nor is there evidence that the docket of one district is significantly more or less congested than the other. Weighing in favor of plaintiff, however, is the local interest in deciding local controversies at home.

Despite the parties' private manifestation of their preference that litigation arising under the contract should take place in New York City, I conclude that plaintiff's claims should not be transferred to the Southern District of New York because plaintiff has averred that litigation in that forum would in effect prevent him from bringing his claims. There is no deference to plaintiff's choice of forum where plaintiff, by way of a forum selection clause, has already

contracted that such litigation be brought in another venue. *Jumara*, 55 F.3d at 880. Even so, the convenience of the parties based upon their physical and financial situations outweigh the forum selection clause. The other private and public factors are neutral or not addressed. The motion to transfer will be denied.

**Conclusion**

I find that plaintiff has alleged facts sufficient to state a claim for intentional interference with a prospective contractual relationship in Count I. As such, I will deny defendants' motion to dismiss Count I pursuant to F.R.C.P. 12(b)(6). I will grant defendants' motion to dismiss Count II against defendant Housman because plaintiff failed to respond to defendants' motion to dismiss this count. Plaintiff has also failed to respond to defendants' motion to dismiss Counts III and IV. I also find that plaintiff has failed to allege facts sufficient to support a declaratory judgment or a claim for conversion, and therefore I will grant defendants' motion to dismiss Counts III and IV pursuant to F.R.C.P. 12(b)(6). Because plaintiff has already had the benefit of oral argument on the complaint and was allowed to file an amended complaint, and has not briefed these issues, the dismissal of these three counts will be with prejudice. Finally, the motion to transfer venue will be denied. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| RUSSELL WILD<br>Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 02-5123 |
| | : | |
| | : | |
| JUNGLE MEDIA GROUP & JON J. HOUSMAN<br>Defendant. | : | |

## Order

And now, this _____ day of March 2004, upon consideration of the defendants' motion to dismiss and alternatively to transfer venue (Doc. #25), the plaintiff's opposition thereto (Doc. # 27), and defendants' response (Doc. #30), it is hereby ORDERED that 1) defendant's motion to dismiss Counts II, III and IV is GRANTED and Counts II, III and IV are dismissed with prejudice; and 2) defendant's motion to dismiss Count I and motion to transfer venue are DENIED.

_____

William H. Yohn, Jr., Judge